**THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| In re: American Honda Motor Co., Inc., | Case No. 2:15-md-02661 |
| CR-V Vibration Marketing and Sales Practices Litigation, | |
| | Judge Michael H. Watson |
| | Magistrate Judge Elizabeth Preston Deavers |
| This document relates to: ALL CASES | |

**DEFENDANT AMERICAN HONDA MOTOR CO. INC.'S
MOTION TO COMPEL ARBITRATION AND
STAY THE CLAIMS OF PLAINTIFFS ROBERT FENNES,
THOMAS MICHAEL PRYCHITKO, ROBERT NONNI, JULIA HSI, AND
MICHELLE AND ROBERT BERGENDAHL AND MEMORANDUM IN SUPPORT**

American Honda Motor Co., Inc. ("AHM")  moves the Court to compel Robert Fennes, Thomas Michael Prychitko, Robert Nonni, Julia Hsi, and Michelle and Robert Bergendahl (collectively, the "Arbitration Plaintiffs") to arbitrate their claims against AHM on an individual basis in accordance with their express, written agreements to do so.[1]  AHM further requests that the Court stay the claims of the Arbitration Plaintiffs in this proceeding pending the outcome of the arbitrations.  A memorandum in support of this Motion is submitted herewith.

---

[1] Emily Vellano and Patricia Flanigan also agreed to arbitrate their claims, but the Second Consolidated Amended Complaint reveals that they have not had any of the available product enhancements implemented in their vehicles. (*See* Compl. ¶¶ 66-67, 132.)  Consequently, AHM moved to dismiss their claims because they are not ripe.  (*See* AHM's Motion to Dismiss Certain Counts In Plaintiffs' Second Consolidated Amended Complaint) (ECF No. 35 at *passim*.)  AHM reserves all of its rights with respect to these and any other Plaintiffs who agreed to arbitrate their claims.

Dated: June 3, 2016             Respectfully submitted,

            /s/ Livia M. Kiser

            Livia M. Kiser (*pro hac vice*)
            lkiser@sidley.com
            J. Simone Jones (*pro hac vice*)
            Simone.jones@sidley.com
            SIDLEY AUSTIN LLP
            One South Dearborn
            Chicago, IL 60603
            Telephone: (312) 853.7000
            Facsimile: (312) 853.7036

            Michael L. Mallow (*pro hac vice*)
            mmallow@sidley.com
            SIDLEY AUSTIN LLP
            555 West Fifth Street, Suite 4000
            Los Angeles, California 90013
            Tel:  (213) 896-6666
            Fax:  (213) 896-6600

            James A. Wilson (0030704)
            jawilson@vorys.com
            VORYS, SATE, SEYMOUR & PEASE
            52 East Gay Street
            P.O. Box 1008
            Columbus, Ohio 43216
            Tel:  (614) 464-5606
            Fax:  (614) 719-5039

            *Attorneys for Defendant American*
            *Honda Motor Co., Inc.*

## MEMORANDUM IN SUPPORT

## INTRODUCTION

Plaintiffs allege they purchased 2015 Honda CR-V vehicles that "experience[] substantial vibration" in three different driving modes.  The Arbitration Plaintiffs further claim that the product enhancements developed by AHM and implemented in their vehicles pursuant to warranty were not effective.  Plaintiffs filed suit against AHM on behalf of themselves, a nationwide class, and classes of CR-V purchasers and/or lessees of fourteen different states.  The Arbitration Plaintiffs filed suit and are pursuing class wide relief, even though they expressly agreed to arbitrate individually the claims that form the basis of this litigation.

Per the express language in their respective arbitration agreements the threshold question of arbitrability is for the arbitrator to decide.  On this basis alone, the Court should grant AHM's motion, so that an arbitrator can decide whether Plaintiffs' claims are subject to arbitration.  But even if the Court determines the scope of each arbitration provision is an individual question for this Court to resolve, AHM's motion to compel should still be granted for a number of reasons.

AHM did not sign the purchase agreements or repair order that are the basis for this motion to compel arbitration. But based on equitable estoppel principles, AHM is nonetheless permitted to compel the Plaintiffs to arbitrate their claims against AHM.

*First*, the claims of Plaintiffs Fennes, Prychitko, Nonni, and Hsi are grounded in their purchase documents, all of which contain expansive arbitration provisions that require them to arbitrate *all* claims, and necessarily depend upon their having purchased new Honda vehicles from authorized Honda dealerships equipped with limited, written warranties provided by AHM. Plaintiffs Fennes, Prychitko and Hsi's claims also derive from the "relationship" they have with AHM as the express warrantor of the vehicle (a "third part[y] who [did] not sign" the purchase

agreements, but who (by the plain terms of the purchase documents) has the right to enforce the arbitration provisions and is also subject to its terms). *See*, *e.g*., Fennes Purchase Agreement, FENNES_000010-FENNES_000013, attached hereto as Exhibit A.

Similarly, Michelle and Robert Bergendahls' claim that the product enhancements developed by AHM are somehow ineffective implicates agreements (known as "repair orders" or "ROs") documenting the work performed by their dealership pursuant to warranties provided by AHM in response to their vibration complaints. These ROs expressly require the Bergendahls to arbitrate any claims related to the work performed. In this case, because the ROs reflect implementation of a Service Bulletin AHM issued to the dealerships to address vibration (the costs of which were submitted to AHM for reimbursement), AHM plainly falls within the ambit of the parties who are subject to (and entitled to enforce) the agreement to arbitrate the effectiveness of the offered remedy.

*Second*, although AHM expressly denies that it has engaged in any wrongful conduct whatsoever (including, without limitation, the conduct alleged in the complaint), plaintiffs plead allegations of substantially interdependent and concerted misconduct by AHM (a non-signatory expressly within the scope of the agreements) and signatories (*i.e.*, the dealerships), with the Arbitration Plaintiffs specifically alleging that AHM and the dealerships *acted together* to cause the alleged harms. Plaintiffs' claims against the dealers fall squarely within their agreements to arbitrate. Thus, they should be estopped from avoiding arbitration through evasive pleading.

As recognized in this District and elsewhere, non-signatory manufacturers and distributor/warrantors routinely compel arbitration against purchasers in circumstances such as those presented here. *See*, *e.g*., *Orcutt v. Kettering Radiologists, Inc.*, 199 F. Supp. 2d 746, 752 (S.D. Ohio 2002) (applying equitable estoppel and requiring arbitration of claims by signatory

against nonsignatory); *see also Agnew v. Am. Honda Motor Co., Inc.*, No. 1:08-cv-01433-DFH-TAB, 2009 WL 1813783, *1, *4-5 (S.D. Ind. May 2, 2009) (compelling arbitration of dispute between signatory purchaser and nonsignatory distributor/warrantor based on arbitration provision in purchase agreement); *Ford Motor Co. v. Ables*, 207 F. App'x 443, 448 (5th Cir. 2006) (same). AHM thus respectfully requests this Court grant AHM's motion to stay the claims of the Arbitration Plaintiffs pending the outcome of those arbitrations.

## <u>RELEVANT FACTUAL AND PROCEDURAL HISTORY</u>

I.     **Plaintiff Robert Fennes Purchases A 2015 Honda CR-V Pursuant to an Agreement Containing an Arbitration Clause.**

Plaintiff Robert Fennes purchased a new 2015 Honda CR-V from Hendrick Honda Daytona in Daytona Beach, Florida, on December 27, 2014. (*See* Fennes Purchase Agreement, FENNES_000010-FENNES_000013, attached hereto as Exhibit A.) As part of the purchase, he executed a purchase agreement that, by its express terms, calls for the arbitration of disputes related to the vehicle's purchase, including by "third parties who do not sign" the agreement:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute) between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this Order and Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Order and Agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(*See id.* at FENNES_000013.)

II.     **Plaintiff Thomas Michael Prychitko Purchases A 2015 Honda CR-V Pursuant to an Agreement Containing an Arbitration Clause.**

Plaintiff Thomas Michael Prychitko purchased a new 2015 Honda CR-V from Suburban Honda in Farmington Hills, Michigan, on September 29, 2015. (*See* Prychitko Purchase Agreement, PRYCHITKO_000004-PRYCHITKO_000005, attached hereto as Exhibit B.) In

connection with the purchase, he signed the following acknowledgment that appears on the front page of his contract:  "PURCHASER ACKNOWLEDGES THAT IF THIS BOX IS CHECKED, THIS AGREEMENT CONTAINS AN ARBITRATION CLAUSE."  (*Id.* at PRYCHITKO_00004.)  The box is checked.  (*Id.*)  Plaintiff Prychitko also agreed to arbitrate the claims at issue here with both signatories and "third parties who do not sign this contract":

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute) between you and us or our employees, agents, successors or assigns, which arise out of or relate to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(*Id.* at PRYCHITKO_00005.)

### III. Plaintiff Robert Nonni Purchases a 2015 Honda CR-V Pursuant to a Purchase Agreement Containing an Arbitration Clause.

Plaintiff Robert Nonni purchased a new 2015 Honda CR-V from Prime Honda-Saco in Saco, Maine, on August 28, 2015.  (*See* Nonni Purchase Agreement, NONNI_000006-NONNI_000007, attached hereto as Exhibit C; *see also* Second Consolidated Am. Compl. ("Complaint" or "SAC") ¶ 81.)  By its express terms, the contract that he executed requires that he submit to arbitration "any claim arising out of or relating to" the purchase of the vehicle, including the claims that he has brought against AHM in this action:

> **Agreement for Binding Arbitration**: Purchaser and Dealer hereby agree, except as stated below, to submit any claim arising out of or related to this Motor Vehicle Purchase Contract ("MVPC"), independently and not in conjunction with any other group or class claims, for binding arbitration pursuant to the Federal Arbitration Act instead of submitting claims to a court or jury.  A demand for arbitration shall be filed with Mediation Works Incorporated (MWI) by submitting the demand to their offices in Boston, Massachusetts, unless the parties agree otherwise.  The arbitrator shall have all powers provided by law and contract, including but not limited to, money damages, declaratory relief, and injunctive relief. The award of the arbitrator shall be final and binding and can be enforced in any state or federal court having competent jurisdiction within the

State of Maine. Notwithstanding this paragraph, Purchaser may submit claims pursuant to M.R.S.A. §1161-1169, if applicable. Claims of repossession, replevin or any other claim arising from Purchaser's failure to make payments on a timely basis may, at the option of Dealer or its assignee, be pursued in a court of competent jurisdiction.

(*See* Nonni Purchase Agreement, Exhibit C, at NONNI_000006.)  Although the vehicle was purchased in Maine, the Nonni Purchase Agreement states that it is governed by Massachusetts law.  (*Id*. at NONNI_000007.)

## IV.    Plaintiff Julia Hsi Purchases A 2015 Honda CR-V Pursuant to a Purchase Agreement Containing an Arbitration Clause

Plaintiff Julia Hsi purchased a new 2015 Honda CR-V from Honda of Stevens Creek in San Jose, California, on October 23, 2015.  (*See* Hsi Purchase Agreement, attached hereto as Exhibit F; *see also* SAC ¶ 56.)  Plaintiff Hsi (and her co-buyer, Zuren Hsi) affirmatively chose to arbitrate by signing the "Agreement to Arbitrate" on page one of the contract.  Ex. F hereto at 1 ("By signing below, you agree that, pursuant to the Arbitration Provision on page 7 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. …") The Arbitration Provision, in turn, requires her to arbitrate "[a]ny claim or dispute" arising out of the "purchase or condition of this vehicle," including with "third parties who do not sign this contract":

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute) between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(*See* Hsi Purchase Agreement, Exhibit F, at 7.)  Plaintiff Hsi also signed an acknowledgement below the Arbitration Provision, as did her co-buyer, Zuren Hsi.

**V.**     **Plaintiffs Michelle and Robert Bergendahl Purchase A 2015 Honda CR-V and Enter Into an Agreement Containing an Arbitration Clause That Is Related to Certain Warranty Work Performed On Their Vehicle**

Plaintiffs Michelle and Robert Bergendahl purchased a 2015 Honda CR-V from Lithia Honda in Medford, Oregon, on April 25, 2015.   (*See* Bergendahl Purchase Agreement, BERGENDAHL_000016-BERGENDAHL_000019, attached hereto as Exhibit I; *see also* SAC ¶ 109.)  In December 2015, the Bergendahls advised Lithia Honda that their CR-V experienced "abnormal vibration when in drive and stationary."   (December 2015 Invoice, BERGENDAHL_000011-BERGENDAHL_000013, attached hereto as Exhibit E, at BERGENDAHL_000011.)  A technician at the dealership "performed all procedures listed by Bulletin Driving Mode 1."  (*Id*.)   Around that same time, the Bergendahls informed the dealership that they perceived the vibration at low rpms.  (*Id*.)  Consequently, a Lithia Honda technician also performed the "driving mode 2" countermeasure on the Bergendahls' vehicle. (*Id*. at BERGENDAHL_000012.)

Each page of the December 2015 Invoice contains the following "STATEMENT OF DISCLAIMER AND ARBITRATION AGREEMENT" applicable to the work performed pursuant to the "factory warranty" provided by AHM, including specifically the product enhancements that were developed by AHM and installed in their vehicle as described in Service Bulletin 15-046:

> The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaimers all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose.  Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items.  Any dispute between customer and the dealership arising from or related to this vehicle or this transaction will be settled by mandatory and binding arbitration pursuant to the Federal Arbitration Act 9 U.S.C. § 1 et. seg. The arbitration shall be conducted by a single arbitrator. The arbitrator may grant whatever relief the parties may be entitled to at law or in equity.

(*Id*. at BERGENDAHL_000011- BERGENDAHL_000013.)

## VI. Plaintiffs Allege Claims Against AHM That Depend Upon More Than Vehicle Purchase

On March 3, 2016, Plaintiffs filed their Second Amended Consolidated Complaint ("SAC") against AHM. Plaintiffs expressly omitted dealers from the SAC even though Plaintiffs allege AHM and dealers—entities who are independent businesses entirely separate from AHM—engaged in wrongful, concerted conduct. (SAC ¶¶ 40, 53, 54.) And although the agreements to arbitrate were entered into when the Arbitration Plaintiffs purchased their cars (or as a result of warranty work performed on their vehicles), their claims against AHM depend upon more than just the fact of purchase.

For example, a bedrock allegation in Plaintiffs' complaint is the purported failure of AHM and its dealers to disclose information related to vehicle vibration, which purported concealment (Plaintiffs contend) "was intended to induce Plaintiff and other members of the proposed class to enter into a transaction" (*i.e.*, the purchase or lease their vehicles) (*see, e.g.*, SAC ¶¶ 211, 299; *see also* SAC ¶ 172 (Plaintiffs "purchased and leased vehicles" in reliance on omission related to vibrations.) Under their agreements' plain terms, Plaintiffs' claims (if brought against the dealers) would be subject to arbitration. See disc. supra.

Indeed, Plaintiffs' pleading is rife with allegations of concerted wrongdoing by AHM and independent Honda dealerships. (*See, e.g.*, SAC ¶¶ 10, 12, 14, 17, 53-54, 69-74, 92-96, 109-113, 142-168, 215-222, 232-240, 250-255, 280-286.) For example, the Arbitration Plaintiffs allege "Honda and its dealerships have frequently denied the existence of the problem[, never disclosed any problem when it knew that one existed,] or said no warranty repair was available, only to then secretly develop a warranty repair that it has not made known to the general public." (*Id*. ¶¶ 170, 220, 236, 253, 283.) There can be no reasonable dispute that such allegations and claims as

against the dealers would be arbitrable. AHM respectfully submits that under governing law, the exact same claims are also arbitrable by AHM.

## ARGUMENT

### I.     Governing Legal Standard

Federal policy strongly favors arbitration for dispute resolution.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  "[F]ederal law requires that 'questions of arbitrability . . . be addressed with a healthy regard" for this policy.  *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 n.5 (2009) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  "[C]ourts must place arbitration agreements on an equal footing with other contracts, . . . , and enforce them according to their terms, . . . ." *Concepcion*, 563 U.S. at 339 (internal citations omitted).  "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 504 (6th Cir. 2007).  The Court should order arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 395 (6th Cir. 2014) (quoting *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 209 (1991)); *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 391 (6th Cir. 2008) (stating "While we agree that this interpretation is not the only plausible one, the law requires us to resolve ambiguity 'concerning the scope of arbitrable issues . . . in favor of arbitration.'").

Moreover, the Federal Arbitration Act provides that a stay of proceedings is appropriate pending the outcome of the arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3 (2008); *Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005) (providing that one of the tasks for a court in considering a motion to stay proceedings and compel arbitration under the Federal Arbitration Act is to "determine whether to stay the remainder of the proceedings pending arbitration")). As the Supreme Court held in *Carlisle*, Section 3 "allows litigants already in federal court to invoke agreements made enforceable by § 2 [of the FAA]"; thus, a party to the litigation could seek to stay the action if it involved an "issue referable to arbitration under an agreement in writing." *Carlisle*, 556 U.S. at 630. It is therefore appropriate for this Court to compel the Arbitration Plaintiffs to arbitrate their claims against AHM and to stay this action pending the outcome of the arbitrations. *See id.*

## II.     The Fennes, Prychitko, Nonni, and Hsi Purchase Agreements Are Valid Including The Agreements To Arbitrate

The Fennes, Prychitko, Nonni, and Hsi Purchase Agreements (and the arbitration provisions contained therein) are valid and enforceable. Plaintiffs Fennes, Prychitko, Nonni, and Hsi all signed their agreements. (*See* Fennes Purchase Agreement, Exhibit A, at FENNES_000011; Prychitko Purchase Agreement, Exhibit B, at PRYCHITKO_00004; Nonni Purchase Agreement, Exhibit C, at NONNI_000006; Hsi Purchase Agreement, Exhibit F, at 1-7.) They also received copies of them.[2] Thus, the validity of the Purchase Agreements cannot reasonably be questioned, and indeed, there is no allegation in the Complaint that any of the

---

[2] Plaintiff Hsi produced an unsigned version of her purchase agreement. *See, e.g.*, (HSI_000014-HSI_000020.) Her counsel claimed she did not have a signed copy. (*See* Excerpts of April 15, 2016 Email from L. Kiser to C. Corbitt, attached hereto as Ex. G.) After obtaining permission from Plaintiffs' counsel, AHM asked the dealership to provide the signed version of the purchase agreement. It did so. Plaintiff Hsi did sign the agreement including specifically the provision requiring her to arbitrate her claims.

agreements are unenforceable (nor could there be, given that Plaintiffs' claims depend upon their purchase documents). As such, the Court should presume that the agreements are valid.[3]

## III. The Bergendahl Repair Order Reflects Warranty Work Paid Pursuant To The "Factory Warranty" Issued And Paid For By AHM And Is Likewise Valid

Similarly, the Bergendahl RO is a valid and enforceable agreement between and among the Bergendahls, the dealership, and AHM. The Bergendahls requested warranty repairs from the dealership. In response, the dealership installed product enhancements developed by Honda and provided by AHM to dealers via Service Bulletin 15-046, product enhancements which AHM paid for and provided to the Bergendahls as part of their purchase of the vehicle. The dealership and AHM fulfilled their respective obligations, the Bergendahls received the promised enhancements, and there is no allegation that the agreement set forth in the RO is invalid. As such, the Court should presume the validity of the RO. *See, e.g.*, *Taylor v. Ash Grove Cement Co.*, CV-03-1509-ST, 2004 WL 1382726, at *10 (D. Or. Feb. 25, 2004), report and recommendation adopted, 2004 WL 1418783 (D. Or. June 22, 2004) (holding that "'[t]he law entertains a presumption which favors the validity and correctness of written instruments' and reformation is permissible only where there is clear and convincing evidence of mutual mistake and proof of a valid antecedent agreement" (quoting *Koennecke v. Waxwing Cedar Products, Ltd.*, 543 P.2d 669, 671 (Or. 1975))).

---

[3] *See Rowan v. Brookdale Senior Living Cmtys., Inc.*, No. 1:13-cv-1261, 2015 U.S. Dist. LEXIS 175320, at *12-13 (W.D. Mich. June 1, 2015) (stating that under Michigan law, "courts will generally presume the legality, validity, and enforceability of contracts") (citations omitted); *Morey v. Chambers*, No. 05-2075, 2006 Mass. Super. LEXIS 216, at *6-7 (Mass. Super. Ct. Mar. 13, 2006) (same); *McLaughlin v. McLaughlin*, 159 Cal. App. 2d 287, 292 (1958) (stating that California law presumes that a contract is valid and not invalid); *Sightler v. Remington College*, No. 6:15-cv-273, 2015 U.S. Dist. LEXIS 94793, at *8-9 n.2 (M.D. Fla. July 20, 2015) (finding that "State law governs contract-formation disputes, . . . and Florida law presumes that a party signing a contract read and understood the contract's provisions . . .") (citations omitted).

IV.    The "Clear and Unmistakable" Terms of the Arbitration Plaintiffs' Agreements Delegate to the Arbitrator the Power to Decide Issues Regarding Interpretation, Scope, and Applicability of the Arbitration Provisions

A Court must compel arbitration of the gateway issues of arbitrability where an arbitration provision "clearly and unmistakably" provides that these issues, including the interpretation, scope, and the arbitrability of the claim or dispute, are to be decided by an arbitrator and not by judicial determination.  *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-70 & n.1 (2010); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

The Fennes, Prychitko, and Hsi Agreements could not be more unambiguous:  arbitrators are to decide "[a]ny claim or dispute . . . (including the interpretation and scope of this [Arbitration Provision or clause], and the arbitrability of the claim or dispute)."  (*See* Fennes Purchase Agreement, Exhibit A, at FENNES_000013; Prychitko Purchase Agreement, Exhibit B, at PRYCHITKO_00005; Hsi Purchase Agreement, Exhibit F, at 7.)

The language in the Nonni Purchase Agreement and the Bergendahl RO are equally plain:  the parties agreed to arbitrate "any claim arising out of or related to this Motor Vehicle Purchase Contract" and any dispute "arising from or related to" the Bergendahl's CR-V or the repair transactions.  (*See* Nonni Purchase Agreement, Exhibit C, at NONNI_000006; Bergendahl December 2015 Invoice, Exhibit E.)    Courts have characterized arbitration provisions like these—which include the phrases "arising out of" or "relating to"—as "broad."  *See, e.g.*, *Livingston v. Metropolitan Pediatrics, LLC*, 234 Or. App. 137, 150 (2010) (reversing trial court's decision that arbitration clause was unenforceable and finding that the broad clause entitled nonsignatories to arbitrate claims against them that arose out of the agreement).  Moreover, such broad arbitration clauses indicate a presumption of arbitrability.  *See Albrizio v. Puccio*, No. 10-

2845-BLS1, 2011 WL 1771077, *2 (Mass. Sup. Ct. Apr. 11, 2011) (reasoning that the "phrase 'arising out of' constitutes broad language that invokes the presumption in favor of arbitration"). The Arbitration Plaintiffs unequivocally agreed to arbitrate "any dispute and claims" "arising out of or relating to" their purchase and repair documentation.  That they now seek to avoid this obligation does not in any respect alter their obligations under these agreements or the fact that their claims against AHM are properly subject to arbitration.  Because, as discussed below, the purchase of a vehicle is a necessary element of their claims, the Arbitration Plaintiffs allege concerted, interdependent misconduct on the part of AHM and the signatory dealers, and in many cases the arbitration clauses expressly contemplate enforcement by "third parties who did not sign" the agreements, the Arbitration Plaintiffs must concede that their claims arise out of or relate to the Purchase Agreements and/or RO and that AHM is entitled to compel arbitration of their claims.

Further, because Plaintiffs admit the purchase agreements and repair orders create relationships between Plaintiffs and AHM (including through AHM's provision of a warranty), the arbitrator is vested with the authority to determine (1) whether AHM can enforce the arbitration provision and (2) the scope of the arbitration provision, including the extent to which the Arbitration Plaintiffs are required to arbitrate their claims against AHM.  But, as discussed in further detail below, even if this Court concludes that any of these initial determinations are properly made by the Court and not arbitrators, relevant authority overwhelmingly supports the conclusion that (1) AHM has standing to enforce the arbitration provisions and (2) the claims of the Arbitration Plaintiffs are subject to arbitration.

## V.    AHM Is Entitled To Enforce The Arbitration Provisions Against Plaintiffs Under a Theory of Equitable Estoppel

Courts in Florida, Michigan, Massachusetts, and California routinely recognize that equitable estoppel allows a nonsignatory such as AHM to compel arbitration in circumstances such as those that are present here.  *Machado v. System4 LLC*, 471 Mass. 204, 211 (2015) (stating that equitable estoppel allows a nonsignatory to compel arbitration under certain circumstances); *Queen v. Right Choice Staffing Group, LLC*, No. 15-10055, 2015 U.S. Dist. LEXIS 87073, at *16-17 (E.D. Mich. July 6, 2015) (concluding that "a party to an arbitration agreement may be equitably estopped from litigating its claims against non-parties in court and may be ordered to arbitration"); *Kolsky v. Jackson Square, LLC*, 28 So. 3d 965, 969 (Fla. Dist. Ct. App. 2010) (stating that a "non-signatory may compel a signatory to arbitration based on the doctrine of equitable estoppel"); *Boucher v. Alliance Title Co., Inc.*, 127 Cal. App. 4th 262, 271-272 (2005).

*First*, when each of the signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and application of equitable estoppel is appropriate.  *Armas v. Prudential Sec., Inc.*, 842 So. 2d 210, 212 (Fla. Dist. Ct. App. 2003) (citing *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)); *see Simpson v. Lifenet, Inc.*, No. 09-cv-12228, 2009 U.S. Dist. LEXIS 121968, at *14-17 (E.D. Mich. Sept. 23, 2009) (applying federal law but noting that even if Michigan law applied, the result would be the same).  Estoppel is similarly appropriate "when a signatory 'must rely on the terms of the written agreement in asserting its claims against the nonsignatory'" and "when the causes of action against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract obligations."  *Machado*, 471 Mass. at 211; *Boucher*, 127 Cal. App. 4th at 271-272.

In this case, not only do the Arbitration Plaintiffs' claims presume the existence of agreements, but the contracts themselves create legal *obligations* that are enforceable by the signatories against non-signatory AHM due to AHM's role as warrantor, as well as legal *rights* that enforceable by AHM against the signatories as a result of the warranty relationship. On the one hand, the terms of the new vehicle warranty that becomes operative upon purchase require vehicle owners to present their vehicles for repair in order for AHM's warranty obligations to trigger. On the other, the seller/dealers are required to perform the warranty work on behalf of AHM at its expense. As the Ninth Circuit Court of Appeal recently held, where an agreement containing an arbitration provision creates "direct obligations" to a non-signatory by a signatory, the non-signatory is entitled to enforce the agreement to arbitrate in accordance with its terms. *Geier v. m-Qube, Inc.*, -- F.3d --, No. 13-36080, 2016 WL 3034064, at *3 (9th Cir. May 26, 2016) (reversing and remanding District Court's denial of motion to compel arbitration). That the non-signatories in *Geier* claimed to be third party beneficiaries is a distinction without a difference: the fact the Ninth Circuit found dispositive was the "direct obligations" the contract created in the non-signatories. *Id.* In this case, and unlike in *Geier*, AHM is not just an unnamed supplier, it is one third of the tripartite purchaser-seller-warrantor relationship, and many of the arbitration provisions at issue here expressly authorize enforcement by "third parties who did not sign" the contracts. *See*, *e.g.*, Prychitko Purchase Agreement, Ex. B hereto, at PRYCHITKO _000005. Thus, the case for enforcement by AHM here is arguably even more compelling than in *Geier*. *See*, *e.g*., *Geier*, 2016 WL 3034064, at *3.

*Second*, "when the signatory raises allegations of . . . substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the

14

contract, application of estoppel is warranted." *Machado*, 471 Mass. at 211; *see also Queen*, 2015 U.S. Dist. LEXIS 87073, at *16-17; *Kolsky*, 28 So. 3d at 969.

Further, the law of Oregon (applicable to Plaintiff Bergendahl) recognizes "a number of rationales for permitting nonsignatory defendants to invoke arbitration clauses in claims against them by signatories to the contract." *Berger v. DIRECTV, Inc.*, No. 3:14-cv-01661-PK, 2015 WL 5686894 (D. Or. Sept. 22, 2015). Indeed, instead of focusing on the identity of the party seeking to enforce the agreement, courts in Oregon "place the language of the agreement at the 'center of the inquiry' and resolve any ambiguities in line with the public policy in favor of arbitration." *Id.* "Broad language in arbitration agreements evidences the parties' intent to allow nonsignatories to enforce its terms."

These theories have been applied in numerous courts on fact patterns that cannot be meaningfully distinguished, *i.e.*, where a vehicle purchaser sues the manufacturer of his vehicle. In such cases, numerous courts have held that equitable estoppel applies and permits the manufacturer to compel arbitration, even where it is not a signatory to the purchase agreement containing the arbitration clause. *See, e.g.*, *Agnew v. Am. Honda Motor Co., Inc.*, No. 1:08-cv-01433-DFH-TAB, 2009 WL 1813783, *1, *4-5 (S.D. Ind. May 2, 2009); *Ford Motor Co. v. Ables*, 207 F. App'x 443, 448 (5th Cir. 2006) (same). For example, *Agnew* addressed a nearly identical situation, where AHM moved to compel arbitration of a claim brought by a purchaser alleging that her vehicle was not "XM Ready," as advertised and marketed by AHM with a purchase agreement containing an arbitration provision similar to the arbitration provisions at issue here. *Agnew*, 2009 WL 1813783, at *1. The Court found that equitable estoppel applied, holding that nonsignatory AHM could compel arbitration of plaintiff's express and implied warranty claims, fraud, and consumer protection statutes, among others, because plaintiff's

15

"purchase of the auto was essential to all of the other claims. Those claims all assume that [AHM] took upon [itself] a duty . . . " that formed the basis of plaintiff's claims. *Id.* at *4.[4] As was the case in *Agnew* and *Ford*, the claims of the Arbitration Plaintiffs all fall within the scope of the arbitration provision and should be compelled to arbitration.[5] All of these claims depend upon the Purchase Agreements and Invoice because (as shown in further detail below) a transaction involving the CR-Vs is a necessary element in each of the Arbitration Plaintiffs' claims.

### A. Plaintiffs' Claims Depend Upon The Existence Of Written Agreements That Create Enforceable Rights

#### 1. Claims for Breach of Implied Warranty and Breach of Express Warranty[6]

"A breach of [express] warranty is essentially a breach of contract" and occurs where a defect in material or workmanship exists and "when it is finally determined that the warrantor will not satisfy the terms of the warranty." *Williams v. Kia Motors America, Inc.*, No. 05-60018, 2005 U.S. Dist. LEXIS 40865, at *15 (E.D. Mich. Oct. 14, 2005); *see also Graham v. Just a*

---

[4] The Fifth Circuit's decision in *Ford* makes similar findings. In that case, the Court found that plaintiff's claims related to the purchase agreement containing the arbitration clause, to which Ford was not a party, because plaintiff alleged that he was induced to purchase the vehicle based upon false and fraudulent representations. *Ford Motor Co.*, 207 F. App'x at 447. The Fifth Circuit also found that the allegations going to both Ford and the dealership were sufficient to constitute interdependent and concerted misconduct. *Id.* at 448.

[5] The Arbitration Plaintiffs bring the following causes of action against AHM: (1) violation of the Magnuson Moss Warranty Act pursuant to written warranty (First Cause of Action – Prychitko, Nonni, Hsi, Bergendahl); (2) violation of the Magnuson Moss Warranty Act pursuant to implied warranty (Second Cause of Action – Prychitko, Nonni); (3) Fraud by Omission (Third Cause of Action – the Arbitration Plaintiffs); (4) Unlawful, Unfair, and Fraudulent Business Practices (Fourth Cause of Action – Hsi); (5) violation of the Consumers Legal Remedies Act (Fifth Cause of Action – Hsi); (6) breach of implied warranties under the Song-Beverly Consumer Warranty Act (Seventh Cause of Action – Hsi); (7) violation of the Florida Deceptive and Unfair Trade Practices Act (Ninth Cause of Action – Fennes); (8) violation of the Maine Unfair Trade Practices Act (Eleventh Cause of Action – Nonni); (9) violation of the Michigan Consumer Protection Act (Thirteenth Cause of Action – Prychitko); and (10) violation of the Oregon Unlawful Trade Practices Act (Seventeenth Cause of Action – Bergendahl).

[6] The Magnuson Moss Warranty Act ("MMWA") states that a consumer who is damaged by a warrantor's failure to comply with any obligation under the statute, or under a written or implied warranty, may bring suit. 15 U.S.C. § 2310(d)(1); *Miekstyn v. BMC Choppers*, No. 266439, 2007 Mich. App. LEXIS 975, at *5-6 (Mich. Ct. App. Apr. 10, 2007) (unpublished). "[T]he MMWA calls for the application of state written and implied warranty law, not the creation of additional federal law." *Id.* at *4.

*Start Corp.*, No. 2009-1220, 2011 WL 3524405 (Mass Sup. Ct. 2011).  To succeed on their

breach of implied warranty claims, Plaintiffs must show, *inter alia*, that a defect or unreasonably

dangerous condition existed at the time the product left the defendant's hands.  *Alves v. Mazda*

*Motor of Am., Inc.*, 448 F. Supp. 2d 285, 300 (D. Mass. 2006); *Guaranteed Const. Co. v. Gold*

*Bond Prods.*, 153 Mich. App. 385, 392 (1986).

The Arbitration Plaintiffs have alleged their purchase transactions and the existence of

warranties as necessary elements of their claims for breach of implied and express warranties.

(*See e.g.*, SAC ¶¶ 52, 56, 59, 60, 64, 65, 68, 69, 74, 75, 80, 81, 86, 87, 91, 92, 96, 97, 101, 102,

108, 109, 113, 114, 118, 119, 123, 124, 128, 129, 133.)  The contracts on which their warranty

claims are based are the Purchase Agreements and Repair Order, with such warranty relationship

only arising because of the purchase of each plaintiff's purchase of a "2015 Honda automobile

. . . distributed by [AHM] . . . and sold by a Honda automobile dealer."  (*See* excerpts AHM

Warranty, attached hereto as Exhibit H, AHM 0000632-AHM 0000673, at AHM 0000642.)

Moreover, the warranties provided by AHM are often specifically referenced in the Purchase

Agreements, and are expressly referenced in the RO.  (*See, e.g.*, Prychitko Purchase Agreement,

Exhibit B, at PRYCHITKO_000004.)  Because the existence of the Purchase Agreements and

Repair Order is an essential element of their claims, and by their terms create obligations to (and

invest rights in) AHM, the Arbitration Plaintiffs cannot avoid arbitration of these claims against

AHM.

## 2.  Claims for Unlawful, Unfair, and Fraudulent Business Practices

The California Unfair Competition Law, Consumers Legal Remedies Act, Song-Beverly

Act, Florida Deceptive and Unfair Trade Practices Act, Maine Unfair Trade Practices Act,

Michigan Consumer Protection Act, and Oregon Unlawful Trade Practices Act require, *inter*

*alia*, that a plaintiff suffer damages.  *See, e.g.*, *Coach, Inc. v. Swap Shop, Inc.*, 916 F. Supp. 2d

1271, 1283 (S.D. Fla. 2012) (providing that damages are an element of a Florida Deceptive and Unfair Trade Practices Act claim); *In re Sony Grand Wega KDF-F A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1091 (S.D. Cal. 2010) (stating that "an act or practice is 'unfair' under the UCL if the consumer injury is substantial"); *Pearson v. Philip Morris, Inc*., 358 Or. 88, 127 (2015) (finding that a plaintiff must prove that his injury—the ascertainable loss—was the result of the alleged unlawful trade practice in order to succeed on an Oregon Unlawful Trade Practices Act claim); *Park City Servs., Inc. v. Ford Motor Co., Inc.*, 144 Cal. App. 4th 295, 303 (2006) (noting that the Song-Beverly Act permits "a buyer of consumer goods who is damaged" to bring suit); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366-1367 (2010) (stating that only consumers who suffer damages as a result of the proscribed act or practice may bring claims under the CLRA); *Duronio v. Merck & Co., Inc.*, No. 267003, 2006 WL 1628516, *6 (Mich. App. Ct. June 13, 2006) (stating that the Michigan Consumer Protection Act "authorizes class actions for damages by a person who suffers a loss"); *Parker v. Ayre*, 612 A.2d 1283, 1284-1285 (Me. 1992) (concluding that private relief under Maine's Unfair Trade Practices Act is "available only if the consumer has suffered a 'loss of money or property' as a result of a violation").

Recognizing that these causes of action require a party to plead and prove actual damages, the Arbitration Plaintiffs allege that they were damaged by the failure of AHM and/or its independent dealers to disclose information "[i]n connection with the 'purchase[] and lease[]' of 2015 CR-V vehicles." (SAC ¶¶ 220, 221, 236, 238, 253, 254.)  Thus, Arbitration Plaintiffs' alleged damages, to the extent there are any, result from their entering into the Purchase Agreements, and which are the mechanism through which Plaintiffs Fennes, Nonni, Prychitko, and Hsi purchased products distributed and warranted by AHM and through which they seek to

18

hold AHM liable.  Further, the RO is the instrument that memorializes the work that was performed on the Bergendahls' vehicle—product enhancements developed and released into the market by AHM, the vehicle's warrantor, in Service Bulletin 15-046.  (SAC ¶¶ 48-50.)  Because any damages that the Arbitration Plaintiffs suffer necessarily flow from their purchases of and warranty work performed on their vehicles, the arbitration provisions contained in the Purchase Agreements and RO govern.  The Arbitration Plaintiffs are equitably estopped from avoiding their agreements to arbitrate.  *See*, *e.g.*, *Agnew*, 2009 WL 1813783 at *1, *4-5; *Ford Motor Co.*, 207 F. App'x at 448; *Orcutt*, 199 F. Supp. 2d 746 at 752.

### 3. The Arbitration Plaintiffs' Claims Make Reference To And Presume The Existence Of The Purchase Agreements And Warranty Repairs

As described in the foregoing and throughout the Complaint, the Arbitration Plaintiffs' claims and allegations against AHM "make reference to," "presume the existence of," and are "intimately founded and intertwined with the obligations" of the Purchase Agreements.  This necessarily requires that the Arbitration Plaintiffs rely on the terms of the documents because without the Purchase Agreements, AHM owes no duty, whether through warranty or otherwise, to the Arbitration Plaintiffs.  *See Agnew*, 2009 WL 1813783, at *4.  Said differently, the existence of the Purchase Agreements is a necessary element of the causes of action alleged by the Arbitration Plaintiffs, and is an integral part of the factual allegations made in the Complaint.

In addition, the provisions at issue specifically contemplate arbitration arising out of relationships with "third parties [such as AHM] who do not sign" the agreements.  (*See* Fennes Purchase Agreement, Exhibit A, at FENNES_000013; Prychitko Purchase Agreement, Exhibit B, at PRYCHITKO_00005; Hsi Purchase Agreement, Exhibit F, at 7.)  The relationship with third-party AHM was clearly contemplated, as everyone knew AHM provides the new vehicle warranties that come with every new Honda vehicle purchased or leased.  (*See* Excerpts of AHM

Warranty, attached hereto as Exhibit H, at AHM 0000642.)  Further, the language in the Bergendahl RO that "[a]ny dispute . . . related to this vehicle or [repair] transaction . . . will be settled by mandatory and binding arbitration" is sufficiently broad to evidence the parties' intent to allow a nonsignatory such as AHM (the actual warrantor and issuer of the service bulletin) to enforce its terms.  *See Berger*, 2015 WL 5686894.  As such, AHM can properly enforce the arbitration provisions in the Purchase Agreements and RO against the Arbitration Plaintiffs.

> **B.  The Arbitration Plaintiffs Raise Allegations Of "Substantially Interdependent And Concerted Misconduct" By AHM And Its Authorized, Independent Dealers**

The Arbitration Plaintiffs are estopped from contesting arbitrability not only because their purchases of vehicles and warranties are essential elements of their claims, but the misconduct they allege by both AHM and the dealers is sufficiently interdependent and concerted that AHM is properly entitled to enforce the agreements to arbitrate.  There can be no reasonable dispute that if plaintiffs had not strategically omitted the dealers from their pleading, the dealers would be entitled to compel arbitration of their claims.  *See Agnew*, 2009 WL 1813783 at *9 (strategic dismissal of dealer could not be used to avoid obligation to arbitrate claims).  (It is well-settled law that where, as here, there are allegations of "substantially interdependent and concerted misconduct by both the nonsignatory and one or more signatories of the contract," all of the claims (including those brought against the non-signatory) are properly compelled to arbitration.  *See Machado*, 471 Mass. at 211; *see also Queen*, 2015 U.S. Dist. LEXIS 87073, at *16-17; *Kolsky*, 28 So. 3d at 969.

> **1.  Arbitration Plaintiffs Allege Concerted Wrongdoing As A Result Of The Development Of A "Secret" Warranty**

In this case, the Arbitration Plaintiffs allege concerted wrongdoing by AHM and independent dealerships with respect to obligations of the dealers (to make repairs) and AHM (to

pay for the repairs) under the 3-year, 36,000-mile limited warranty, by allegedly denying "the existence of the problem" "only to then secretly develop a warranty repair that it has not made known to the general public," and by failing to disclose the existence of the vibration issue at the time of sale despite having knowledge of the issue for "the past year-plus." (*See, e.g.*, SAC ¶¶ 53-54, 170, 220, 236, 253, 283.).

Plaintiffs' excerpts of postings allegedly made by individuals on NHTSA's website and elsewhere on the internet further confirm that the Arbitration Plaintiffs allege concerted wrongdoing by AHM and its independent dealerships:

- "Everyone has the same exact issue, and their Honda service depts say the same comment; 'you are the first one to report the problem. No one else has complained. There is no problem on the new 2015 CR-Vs.'" (*Id.* at pp. 9-10) (NHTSA ID 10681383)

- "The service manager of Honda called me to advise there is a bulletin but no fix to it and it's not a safety issue. I am so unhappy with this dealership no one wants to give me another truck nor do they want to help." (*Id.* at 11) (alleged posting by "Debbie of Lanoka Harbor, NJ" on www.consumeraffairs.com)

- "I have notified both the dealership and Honda to no avail." (*Id.* at p. 11) (NHTSA ID 10715724)

- "I believe I have been deceived both by Honda and the Honda dealer. * * * My complaint is genuine and the dealer has endorsed it as well later shamelessly immediately in the very first week after the sell was completed." (*Id.* at p. 12) (NHTSA ID 10787221)

- "Brought the vehicle back to the dealer twice and the only thing is that they have no fix for this problem. The service department is saying that corporate are working on it." (*Id.* at 17) (NHTSA ID 10817221)

- "We notified the dealership and American Honda immediately. Since then, the dealership attempted to repair the car 5 times and was unsuccessful." (*Id.* at 18) (NHTSA ID 10836476)

### 2. The Arbitration Plaintiffs Allege Concerted Wrongdoing As A Result Of The Alleged "Cover Up" Of The Vibration Issue At Time Of Sale

In addition, Plaintiffs allege that by April 2015, Honda's dealerships were aware of the alleged vibration issue through a "tech line service article." (*See id.* ¶¶ 47-48.) Moreover,

according to Plaintiffs, under a November 2015 service bulletin, "to the extent a 2015 CR-V experience[d] vibration within the 3-year, 36,000-mile scope of Honda's warranty, Honda dealerships [we]re to provide the repairs at no cost." (*Id.* ¶ 54.) Despite this, Plaintiffs allege that following their purchase, "[w]hen many customers returned (often just days later) to complain, Honda refused to refund their money, and dealerships refused to provide free repairs under warranty, saying there was no known problem and no warranty repair was available." (*Id.* ¶ 4.) Plaintiffs claim that "[i]n marketing and selling the 2015 CR-V, Honda never warned potential customers about the vibration. Nor did Honda instruct or authorize its dealerships to do so." (*Id.* ¶ 43.) Plaintiffs thus allege that "over the past year-plus, many . . . drivers were denied warranty repairs" and that "Honda and its dealerships have frequently told drivers that there is nothing wrong: the vibration is normal and Honda does not repair it under warranty." (*Id.* ¶¶ 53-54; *see also id.* ¶¶ 170, 220, 236, 253, 283).

Plaintiffs' fraud by omission claims thus depends upon alleged, concerted misconduct by AHM and third party dealers. The dealers' alleged wrongful conduct plainly is subject to arbitration given Florida, Michigan, Massachusetts, Oregon, and California fraud by omission claims require that a party suffer damages. *In re Palm Beach Finance Partners, L.P.*, 517 B.R. 310, 335 (S.D. Fla. 2013) (reasoning that to state a cause of action for fraud by omission under Florida law, a plaintiff must allege, *inter alia*, that he suffered damages as a result of the alleged concealment or failure to disclose); *Denton v. U.S. Bank, N.A.*, No. 10-3077-CL, 2011 WL 7628515 (D. Ore. Oct. 26, 2011) (providing that "consequent and proximate injury" is an element of a fraud claim under Oregon law). For the same reasons as discussed *supra* the arbitration provisions also apply to their claims against AHM, and they must be compelled to arbitrate.

### C.     Plaintiffs Are Estopped From Avoiding Arbitration Of Their Claims

Because the Arbitration Plaintiffs allege substantially interdependent and concerted misconduct with a signatory (*i.e.*, authorized Honda dealers) that are intertwined with their claims against AHM, Plaintiffs are estopped from refusing to arbitrate their claims against AHM. *MS Dealer Serv. Corp.*, 177 F.3d at 947 (compelling arbitration in favor of nonsignatory automobile service provider where the purchaser signatory raised allegations that are "substantially interdependent and concerted misconduct by both the nonsignatory and one or more signatories of the contract" between the purchaser and automobile dealership) (citations and internal quotations omitted); *Cunningham v. Van Ru Credit Corp.*, 06-10452, 2006 WL 3289775, at *4 (E.D. Mich. Nov. 12, 2006) (compelling arbitration under equitable estoppel theory where claims against debt collection company were inseparably intertwined with claims that came within scope of arbitration agreement with Capital One requiring arbitration of disputes regarding billing and collection matters); *City of Detroit Police & Fire Ret. Sys. v. GSC CDO Fund Ltd.*, No. 289185, 2010 WL 1875758, at *6-7 (Mich. Ct. App. May 11, 2010) (compelling arbitration under equitable estoppel theory based on interdependent conduct); *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 944 (Fla. Dist. Ct. App. 2004).

### VI.    The Court Should Stay The Proceedings As To the Arbitration Plaintiffs and Require Them To Submit To Arbitration To Resolve Their Disputes.

The Federal Arbitration Act provides that a stay of proceedings is appropriate pending the outcome of the arbitration.  9 U.S.C. § 3 (2008); *Glazer*, 394 F.3d at 451 (under the Federal Arbitration Act, a court must "determine whether to stay the remainder of the proceedings pending arbitration") (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).  The Supreme Court held in *Carlisle* that a party to the litigation could seek to stay the action if it involved an "issue referable to arbitration under an agreement in writing."  *Carlisle*, 556 U.S. at

630.    Accordingly, it is appropriate for this Court to stay this action as to the Arbitration Plaintiffs and compel the Arbitration Plaintiffs to submit there claims to arbitration for the purposes of having an arbitrator determine if their claims are arbitrable and if so, the merits of their individual claims against AHM.  *See id.*

## CONCLUSION

For the foregoing reasons, AHM respectfully requests that this Court compel arbitration and stay the claims of the Arbitration Plaintiffs pending the outcome of the arbitrations. Finally, AHM respectfully requests such other and further relief as this Court deems appropriate.

Dated: June 3, 2016                Respectfully submitted,

                                  /s/ Livia M. Kiser
                                  Livia M. Kiser (*pro hac vice*)
lkiser@sidley.com
J. Simone Jones (*pro hac vice*)
Simone.jones@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853.7000
Facsimile: (312) 853.7036

Michael L. Mallow (*pro hac vice*)
mmallow@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Tel:  (213) 896-6666
Fax:  (213) 896-6600

James A. Wilson (0030704)
jawilson@vorys.com
VORYS, SATE, SEYMOUR & PEASE
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216
Tel:  (614) 464-5606
Fax:  (614) 719-5039

*Attorneys for Defendant American
Honda Motor Co., Inc.*

### INDEX OF EXHIBITS

| Exhibit | Date | Brief Description |
|---|---|---|
| Exhibit A | 12/27/2014 | Buyer's Order, Agreement & Vehicle Information Form ("Fennes Purchase Agreement"), produced by Plaintiffs as Bates No. FENNES_000010 to FENNES_000013 |
| Exhibit B | 9/29/2015 | Vehicle Purchase Agreement ("Prychitko Purchase Agreement"), first page produced by Plaintiffs as Bates No. PRYCHITKO_00005 and copy of identical contract form |
| Exhibit C | 8/28/2015 | Motor Vehicle Purchase Contract ("Nonni Purchase Agreement"), produced by Plaintiffs as Bates No. NONNI_000001 to NONNI_000002 |
| Exhibit D | 9/15/2015 | Repair Order from Lithia Honda dated Sept. 15, 2015 ("Bergendahl 9/15/15 RO"), produced by Plaintiffs as Bates No. BERGENDAHL_000014 to BERGENDAHL_000015 |
| Exhibit E | 12/29/2015 | Repair Order from Lithia Honda dated Dec. 29, 2015 ("Bergendahl 12/29/15 RO"), produced by Plaintiffs as Bates No. BERGENDAHL_000011 to BERGENDAHL_000013 |
| Exhibit F | 10/30/2015 | Retail Installment Sale Contract – Simple Finance Charge (With Arbitration Provision) ("Hsi Purchase Agreement") |
| Exhibit G | 4/13/2016 | Excerpts of email chain from D. Stein to L. Kiser |
| Exhibit H | Undated | Excerpts of AHM Warranty, produced by Defendant as Bates No. AHM 0000632-AHM 0000673 |
| Exhibit I | 4/25/2015 | Bergendahl Purchase Agreement, produced by Plaintiffs as Bates No. BERGENDAHL_000016 to BERGENDAHL_000019 |