THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re: American Honda Motor Co., Inc., <br><br>CR-V Vibration Marketing and Sales Practices Litigation, <br><br><br><br><br><br>This document relates to: ALL CASES | Case No. 2:15-md-02661 <br><br><br> Judge Michael H. Watson <br><br> Magistrate Judge Elizabeth Preston Deavers |

**DEFENDANT AMERICAN HONDA MOTOR CO. INC.'S
REPLY BRIEF IN SUPPORT OF ITS TO COMPEL ARBITRATION AND
STAY THE CLAIMS OF PLAINTIFFS ROBERT FENNES,
THOMAS MICHAEL PRYCHITKO, ROBERT NONNI, JULIA HSI, AND
<u>MICHELLE AND ROBERT BERGENDAHL</u>**

Plaintiffs Robert Fennes, Thomas Michael Prychitko, Robert Nonni, Julia Hsi, and Michelle and Robert Bergendahl (collectively, the "Arbitration Plaintiffs") sued American Honda Motor Co. Inc. ("AHM")[1] based on their claim that AHM, in conjunction with its dealers, failed to disclose material facts to the Arbitration Plaintiffs prior to their vehicle purchases. The Arbitration Plaintiffs allege that had they known the "true" facts, they would not have purchased their vehicles (or would have paid a lower price). At the core of Plaintiffs' putative class action is a purported "fraud" perpetrated by AHM and its dealers that (allegedly) induced the Arbitration Plaintiffs to purchase their vehicles, which is why the Arbitration Plaintiffs' demand reimbursement and compensation for the allegedly inflated price term in their purchase agreements[2] and the allegedly ineffective product enhancements installed by the dealers pursuant to dealer repair invoices.[3] *The Arbitration Plaintiffs even seek rescission of their Purchase Agreements, a remedy enforceable against only the dealers who sold them the vehicles in the first place.*[4] Because the Arbitration Plaintiffs' claims (including their claims for relief) rely and

---

[1] Capitalized terms not defined herein shall have the meanings ascribed in AMH's Motion to Compel Arbitration and Stay the Claims of Plaintiffs Robert Fennes, Thomas Michael Prychitko, Robert Nonni, Julia Hsi, and Michelle and Robert Bergendahl (Dkt. 51) (the "Motion").

[2] *See* Fennes Purchase Agreement, FENNES_000010-FENNES_000013, attached to the Mot. as Exhibit A; Prychitko Purchase Agreement, PRYCHITKO_000004-PRYCHITKO_000005, attached to the Mot. as Exhibit B; Nonni Purchase Agreement, NONNI_000006-NONNI_000007, attached to the Mot. as Exhibit C; Hsi Purchase Agreement, attached to the Mot. as Exhibit F; Bergendahl Purchase Agreement, BERGENDAHL_000016-BERGENDAHL_000019, attached to the Mot. as Exhibit I. These documents are collectively referred to herein as the "Purchase Agreements."

[3] December 2015 Invoice, BERGENDAHL_000011-BERGENDAHL_000013, attached to the Mot. as Exhibit E (the "December 2015 Invoice").

[4] *See* Second Consol. Am. Compl. at 68 (Dkt. 29); but see cite: *Stoebner Motors Inc. v. Automobili Lamborghini S.P.A.*, 359 F. Supp. 2d 1028, 1038 (D. Ha. 2006) (holding rescission not available against manufacturer absent privity with purchaser); *Harper v. Navistar, Inc.*, No. 2:15-cv-03558, 2016 WL 1178782, at *4 (S.D. W. Va. Mar. 23, 2016) (dismissing claim for rescission of purchase contract against manufacturer who was not party to the purchase contract for lack of privity); *Tolliver v. Monaco Coach Corp.*, No. 8:06-CV-856-T-30TGW, 2006 WL 1678842, at *2 (M.D. Fla. June 16, 2006) ("[U]nder Florida law, a buyer may not maintain a revocation of acceptance claim against a non-selling, non-privity vehicle manufacturer."); *Long v. Monaco Coach Corp.*, No. 3:04-CV-203, 2006 WL 2564040, at *4–5 (E.D. Tenn. Aug. 31, 2006) (under Tennessee law, "revocation of acceptance is not an available remedy in the absence of privity . . . If the revocation of acceptance is the remedy plaintiffs ultimately desired, then they needed to file suit against the seller[.]"); *Smith v. Monaco Coach Corp.*, 334 F. Supp. 2d 1065, 1070 (N.D. Ill. 2004) ("[T]he purpose of revocation is to cancel the sale and return the parties to

1

depend on the purchase of their vehicles (including price paid) – and, with respect to Ms. and Mr. Bergendahl, the product enhancements installed by the dealer – the Arbitration Plaintiffs are equitably estopped from avoiding arbitration of their claims with AHM, even though AHM is not a signatory to those arbitration agreements.

*First and foremost*, AHM's status as a nonsignatory is irrelevant to the threshold question of whether the arbitration provisions delegate questions of arbitrability to an arbitrator (they do).[5] Here, Plaintiffs admit the agreements are valid and enforceable; their quarrel is whether AHM is a "third part[y] who d[id] not sign this Order and Agreement."[6]  Although Plaintiffs spill considerable ink explaining who (in their opinion) is (and is not) encompassed within this broad language, the arbitration provisions themselves (and governing authority) make clear that the *arbitrator* – not the signatories, nor anyone else –must interpret this language, including its scope.[7]

*Second*, the Arbitration Plaintiffs are equitably estopped from avoiding arbitration because the contracts' plain language calls for mandatory arbitration of their claims.  Claims subject to arbitration expressly include "any claim or dispute" which "arises out of … your…purchase or condition of this Vehicle … *or any resulting transaction or relationship* (including any such relationship with third parties who did not sign this Order and Agreement)."[8]

---

status quo ante. Because the manufacturer was not involved in the sale transaction, it would have no role in the cancellation—only the parties actually involved in the sale would be affected.").

[5] *See*, *e.g.*, Fennes Purchase Agreement, Mot. Ex. A at FENNES_000013 ("Any claim or dispute … (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute) … shall … be resolved by neutral, binding arbitration and not by a court action.").

[6] Opp. at 6.

[7] *See, e.g.*, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-70 & n.1 (2010).

[8] *See, e.g.*, Prychitko Purchase Agreement at PRYCHITKO_000005 (Mot. at Ex. B) (emphasis supplied); Hsi Purchase Agreement at 7 (Mot. at Ex. F) (emphasis supplied).

There is no dispute that as a result of the purchase of their vehicles, the Arbitration Plaintiffs entered into a "relationship" with AHM as their vehicles' express warrantor. There is likewise no dispute that Plaintiffs' claims arise out of the "purchase or condition of" their vehicles, and that AHM is a "third party who did not sign" the agreements. This contractual language creates express obligations to nonsignatory third parties, among them AHM. That the contracts elsewhere may identify the contracting parties as purchaser/dealer or buyer/seller has no bearing on the obligations set forth in black and white.

Moreover, the fact that the Arbitration Plaintiffs plead allegations of substantially interdependent and concerted misconduct by AHM and the signatory dealerships – with the Arbitration Plaintiffs specifically alleging that AHM and the dealerships *acted together* in many respects to cause the alleged harms – only further demonstrates the Arbitration Plaintiffs are equitably estopped from avoiding their agreements to arbitrate. As noted above, the Arbitration Plaintiffs contend AHM and the dealers fraudulently induced them into purchasing their vehicles.[9] Even though the Arbitration Plaintiffs have (strategically) failed to sue the dealers, their pleading includes claims against the dealers they simply elected to not assert. There is no doubt, however, that had they decided to name the dealers, the claims against the dealers would be subject to arbitration.

*Finally*, the Magnuson-Moss Warranty Act (the "MMWA") does not provide an escape hatch to the Arbitration Plaintiffs to avoid arbitration as they would wish. The MMWA is not a "get out of arbitration free" card, as already held by the Fifth and Eleventh Circuits. In any event, Congress and the United States Supreme Court are clear that the intent of Congress is to favor arbitration of contractual claims such as these. And even if the MMWA did somehow bar

---

[9] *See* Pls.' Second Consolidated Am. Compl. ¶¶ 56-58, 69-73, 81-85, 92-95, 109-112.

arbitration of the Arbitration Plaintiffs' express warranty claims (though it does not), all of Plaintiffs' other claims remain subject, and are properly compelled, to arbitration.[10]

## REPLY ARGUMENTS

I. **The Questions of Arbitrability of the Arbitration Plaintiffs' Claims Are for the Arbitrator**

The arbitrator should interpret and determine the scope of the arbitration agreements because the Arbitration Plaintiffs concede that they all entered into mandatory arbitration provisions with the dealerships in which they agreed the arbitrator would make arbitrability determinations.[11]

As the plain language of the Arbitration Plaintiffs' Purchase Agreements and the December 2015 Invoice make clear, the Arbitration Plaintiffs "clearly and unmistakably" agreed that certain threshold issues, including the interpretation and scope of the arbitration clause, and the arbitrability of the Arbitration Plaintiffs' claims would be decided by the arbitrator, and not the court. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 106 U.S. 643, 648 (1986).[12] Because the Arbitration Plaintiffs "clearly and unmistakably" empowered an arbitrator to interpret the arbitration clause, determine its scope, and decide the issue of arbitrability, the Court must enforce the arbitration provisions as written and compel arbitration of these gateway issues. *See Gateway Structures, Inc. v. Carpenters*, 779 F.2d 485, 488–89 (9th Cir. 1985)

---

[10] *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) (holding that the Federal Arbitration Act requires district courts to compel arbitration of arbitrable claims even where possibly inefficient maintenance of separate proceedings in different forums results); *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 26 (2011) (same); *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 472 (6th Cir. 2009) (same).

[11] *See* Pls.' Opp. To Mot. to Compel Arbitration at 1, 3-4 (Dkt. 64).

[12] Moreover, the fact that the arbitration provisions governing the claims of Mr. Fennes, Mr. Prychitko, and Ms. Hsi all expressly reference arbitration before the American Arbitration Association, which rules provide that the arbitration "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Courts hold that such incorporation provides further unmistakable evidence of the parties' intent to delegate such issues to an arbitrator. *See Contec*, 398 F.3d at 208; Fennes Purchase Agreement, FENNES_000010-FENNES_000013 (Mot. at Ex. A); Prychitko Purchase Agreement, PRYCHITKO_000004-PRYCHITKO_000005 (Mot. at Ex. B); Hsi Purchase Agreement (Ex. F).

(holding that whether nonsignatory to arbitration agreement was bound is properly decided by arbitrator); *Contec Corp. v. Remote Solution, Co.,* 398 F.3d 205, 211 (2d Cir. 2005) (holding nonsignatory could compel arbitration).

The *Contec* case is instructive and highly persuasive. In that case, the Second Circuit held, "neither we nor the district court must reach the question whether [the signatory] is estopped from avoiding arbitration with [the nonsignatory] because … arbitration of the issue of arbitrability is appropriate." 398 F.3d at 209. Much like the Arbitration Plaintiffs here, the plaintiff signatory had argued that it could not "be compelled to arbitrate with a stranger to the [a]greement because the contractual language is effective only between the contracting parties." *Id.* The court rejected the plaintiff's argument, noting that an arbitrator should make the arbitrability determination "*even if, in the end, an arbitrator were to determine that the dispute itself is not arbitrable* because [the nonsignatory] cannot claim rights under the [contract]." *Id.* (emphasis added).

In short, whether or not AHM is ultimately correct that the Arbitration Plaintiffs must arbitrate the merits of their claims, the initial question of arbitrability must be decided in the first instance by an arbitrator. *Id*. And because the Purchase Agreement and the December 2015 Invoice, expressly, unambiguously and completely delegate arbitrability issues to the arbitrator (*see* Mot. at 11-12), "the courts [are] divested of their authority and an arbitrator [must] decide in the first instance whether a dispute is arbitrable." *United Bhd. of Carpenters and Joiners of Am., Local No. 1780 v. Desert Palace, Inc*., 94 F.3d 1308, 1310 (9th Cir. 1996) (citation omitted).

II. **Equitable Estoppel Precludes the Arbitration Plaintiffs from Circumventing their Arbitration Clauses**

The Arbitration Plaintiffs concede that federal law and the law of all relevant jurisdictions recognize the doctrine of equitable estoppel to allow a nonsignatory to enforce an

5

arbitration clause against a signatory.[13] They further concede that the "lynchpin for equitable estoppel is equity, and the point of applying it to compel arbitration is to avoid a situation that would fly in the face of fairness."[14] Moreover, the Arbitration Plaintiffs do not dispute that the ***dealerships*** could compel arbitration if they had been sued along side AHM.[15] This Court should not allow the Arbitration Plaintiffs' to avoid arbitration through artful pleading, because, as further described below, this is the exact situation that equitable estoppel is intended to prevent.

### A. The Arbitration Plaintiffs' Claims Reply on the Existence of the Purchase Agreements and the December 2015 Invoice

A plaintiff is estopped from avoiding arbitration where (as here) his claims arise out of or rely upon the agreement containing the arbitration clause. *See Ford Motor Co. v. Ables*, 207 F. App'x 443 (5th Cir. 2006) (reversing and remanding for entry of order requiring car purchaser and nonsignatory car manufacturer to arbitrate). And where a signatory's claims make "reference to or presume[] the existence of a written agreement, the signatory's claims arise out of and related directly to the written agreement," and application of estoppel is appropriate. *See Amisil Holdings Ltd. v. Clarium Cap'l Mgmt.*, 622 F. Supp. 2d 825, 840 (N.D. Cal. 2007); *see also Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 758 (11th Cir. 1993) ("Although Swankiest does not rely exclusively on the license agreement to support its claims, each claim presumes the existence of such an agreement. We find that each counterclaim maintained by Swankiest arises out of and relates directly to the license agreement.").

---

[13] Opp. at 10.

[14] *See id.* (internal citation and quotation omitted).

[15] *Id.* at *passim*.

Here, the Arbitration Plaintiffs' after-the-fact interpretation of their claims in their opposition is belied by the allegations they actually pled in the Second Consolidated Amended Complaint:

- All of Arbitration Plaintiffs, including Messrs. Fennes, Prychitko, Nonni, and Ms. Hsi, focus on the price term in their Purchase Agreements as both proof and measure of their damages, and allege not only that they each purchased their vehicles, but also that if they had known of the alleged vibration problem, they would "not have purchased [their] vehicle, or [they] would have paid substantially less for it."[16]

- Mr. and Ms. Bergendahl rely on the December 2015 Invoice in that they allege that they "subsequently returned to the Lithia Honda dealership for repairs recommended by dealership personnel, including installation of new radiator lower cushions, a new transmission mount, new front head restraints, a tailgate damper kid, and updated PCM software. The repairs failed to eliminate the vibration."[17]

- All of Arbitration Plaintiffs seek rescission of their Purchase Agreements.[18]

Express in these allegations is the assertion that the Arbitration Plaintiffs would not have agreed to the price terms in their Purchase Agreements *or* the allegedly inefficacious remedies identified on the December 2015 Invoice had AHM and the dealers not (purportedly) fraudulently concealed the alleged vibration issue in the first place. Thus, there is no dispute that the Arbitration Plaintiffs' claims refer to, presume the existence of, and rely upon documents containing agreements to arbitration, such that they should be equitably estopped from avoiding arbitration.

---

[16] *See* Pls.' Second Consol. Am. Compl. ¶¶ 56, 59, 69, 74, 81, 86, 92, 96, 109, 113.
[17] *See id.* ¶ 112.
[18] *See id.* at 68 (seeking an "order allowing Plaintiffs and the classes to rescind their purchase and lease agreements").

7

### B. The Contracts' Plain Language Calls For Mandatory Arbitration Of Plaintiffs' Claims Against Third Party AHM

Each of the (admittedly valid and enforceable) arbitration provisions expressly encompasses "any claim or dispute" which "arises out of … [each Arbitration Plaintiff's]…purchase or condition of this Vehicle … *or any resulting transaction or relationship* (including any such relationship with third parties who did not sign" the agreement).[19] The Arbitration Plaintiffs' purchase of their vehicles indisputably "result[ed]" in a "relationship" with AHM they did not have prior to purchase, because AHM is their vehicles' express warrantor. There is likewise no dispute that Plaintiffs' claims in these proceedings arise out of the "purchase or condition of" their vehicles, and that AHM is a "third party who did not sign" the agreements.[20] The arbitration provisions thus create express obligations to certain nonsignatory third parties, among them AHM. And the agreements themselves create obligations to the Arbitration Plaintiffs that AHM, though a nonsignatory, is duty bound to fulfill.

In *Geier*, the Ninth Circuit recently reversed a district court for failing to compel arbitration in favor of a non-signatory supplier alleged to have participated in a scheme to defraud consumers. *See Geier v. m-Qube Inc.*, --- F.3d ---, No. 13-36080, 2016 WL 3034064, at *2-3 (9th Cir. May 26, 2016). The Ninth Circuit reasoned that the nonsignatory could compel arbitration because the agreement with the arbitration clause contained a "direct obligation" between the nonsignatory and the consumer. *Id*. Here, the Arbitration Plaintiffs concede AHM's warranty obligations to them were created upon their purchase of their vehicles (*see*, *e.g*., Opp. Ex. 1 at PLAINTIFFS_000882), and also that this warranty is expressly referenced in the

---

[19] *See, e.g.*, Prychitko Purchase Agreement at PRYCHITKO_000005 (Mot. at Ex. B) (emphasis supplied); Hsi Purchase Agreement at 7 (Mot. at Ex. F) (emphasis supplied).

[20] *See, e.g.*, Prychitko Purchase Agreement at PRYCHITKO_000005 (Mot. at Ex. B) (emphasis supplied); Hsi Purchase Agreement at 7 (Mot. at Ex. F).

8

December 2015 Invoice.[21] Thus, the Arbitration Plaintiffs' argument that AHM has no obligations to them as a result of the underlying agreements is plainly incorrect.

### C. The Arbitration Plaintiffs Allege Substantially Interdependent and Concerted Misconduct by AHM and Its Dealerships

Equitable estoppel also applies where the signatory raises allegations of substantially interdependent and concerted misconduct by the nonsignatory and a signatory to the contract. *See Agnew v. Am. Honda Motor Co.*, No. 1:08-cv-01433-DFH-TAB, 2009 WL 1813783, *1, *4-5 (S.D. Ind. May 2, 2009) (Hamilton, J.);[22] *Ford Motor*, 207 F. App'x at 448; *see also Geier*, --- F.3d ---, No. 13-36080, 2016 WL 3034064, at *3. Although they cast vague aspersions on the *Agnew*, *Ford Motor*, and *Geier* decisions,[23] the Arbitration Plaintiffs fail to meaningfully distinguish them from the instant situation because the authority is on point.

In *Agnew*, then-District Court Judge David Hamilton, who now sits on the Seventh Circuit Court of Appeals, granted nonsignatory AHM's motion to compel arbitration of the plaintiff purchaser's warranty, tort, and consumer protection claims alleging that her vehicle was not "XM Ready," as advertised and marketed by AHM, ***even though the plaintiff dismissed her claims against the dealer that was party to the purchase agreement containing the arbitration clause***. No. 1:08-cv-01433-DFH-TAB, 2009 WL 1813783, at *5. Judge Hamilton reasoned that the plaintiff's claims "rely upon the terms of the purchase agreement with the dealership," because "[t]he claims for breach of express and implied warranties necessarily assume that the warranties were provided as part of the [dealer's] sale to [plaintiff]." *Id.* at *4. Further, because the "purchase of the auto was essential to all of the other claims," all of plaintiffs' tort claims were also subject to arbitration. *Id.*

---

[21] *See* Pls.' Opp. at 13-14.

[22] Plaintiffs make much of the fact that counsel for AHM was counsel of record in *Kramer* and *Soto*. Opp. at 13. Plaintiffs fail to mention, however, that counsel for AHM in this case was also counsel of record in *Agnew*.

[23] *See* Opp. at 12.

9

Here, as in *Agnew*, although the Arbitration Plaintiffs claim that "*none* [] of their claims are bound up in their contracts with independent dealerships,"[24] in point of fact, as discussed *supra*, their argument is unsupported by the facts.  Moreover, the entire Second Consolidated Amended Complaint relies on allegations of concerted wrongdoing by *both* AHM and its dealers, further implicating the contracts.  All of their allegations are based on claims that AHM *and its dealers* colluded in fraudulent concealment of information, and that AHM *and its dealers* refused to develop an adequate warranty repair for the alleged issue.[25]   Indeed, three pages are devoted to alleged complaints from putative class members regarding *both* AHM and the dealerships' alleged failures to acknowledge and properly address the complaints.[26]  The Arbitration Plaintiffs should be estopped from avoiding arbitration of claims they strategically elected to avoid bringing against the so-called dealer/wrongdoers in an (unavailing) attempt to avoid the agreements to arbitrate. *Agnew*, No. 1:08-cv-01433-DFH-TAB, 2009 WL 1813783 at *4-5.

### D.     The Arbitration Plaintiffs' Cited Authority Is Outdated And Inapplicable

As a preliminary matter, although the Arbitration Plaintiffs concede that the question of whether to equitably estop them from avoiding their agreements to arbitrate is to be decided in

---

[24] *See* Opp. at 2.

[25] *See* Pls.' Second Consol. Am. Compl. ¶¶ 56-58  (alleging Ms. Hsi purchased her car from Honda of Stevens Creek, an authorized Honda dealership, that she brought the car to the dealership "to complain," that "[t]he repairs failed to eliminate the vibration," that she "brought her vehicle to Honda of Stevens Creek again," and "[d]dealership personnel installed a tailgate damper kit and updated the PCM software" but "[t]he repairs still failed to eliminate the vibration,"); *id.* ¶¶ 69-73 (alleging Mr. Fennes purchased his car from Hendrick Honda, an authorized Honda dealership," that he "contacted the dealership to complain," that he also contacted "Honda corporate" and a "Honda representative told him that Honda was aware of the issue and working on a repair and also asked that the dealership send data concerning the vibration from Mr. Fennes' vehicle to be analyzed," that he "brought his car into the dealership, where he received a software update," but "[t]he software failed to eliminate the vibration," that he "complained again about the vibration to the dealership" and "[d]earlership personnel installed new radiator lower cushions, a new transmission mount, new front head restraints, a tailgate damper kid, and updated the PCM software" but "[t]he repairs again failed to eliminate the vibration"); *see also id.* ¶¶ 81-85, 92-95, 109-112 (alleging similar allegations against both AHM and the dealerships with respect to Messrs. Nonni, Prychitko, Bergendahl, and Ms. Bergendahl).

[26] *See* Second Consol. Am. Compl. at 16-18.

accordance with the governing states' laws, they fail to cite any authority from Florida, Michigan, or Oregon.[27]

The Arbitration Plaintiffs then cherry pick the decisions of *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013) and *Soto v. American Honda Motor Co.*, 946 F. Supp. 2d 949 (N.D. Cal. 2012) to try to buttress their argument that they should not be compelled to arbitrate their claims even though they signed valid, enforceable arbitration agreements that are governed by laws of other states. Putting aside the fact that these decisions are from a jurisdiction notoriously hostile to arbitration (California),[28] both are distinguishable and inapplicable. For example, *Kramer* was decided solely under California state law[29] in a situation where the nonsignatory moved to compel after actively litigating for two years.[30]

In any event, there is no reason for this Court to find *Kramer* persuasive when the majority of the contracts at issue here are governed by the laws of states other than California, and AHM filed this motion at the earliest possible moment (after making a formal demand of the Arbitration Plaintiffs to voluntarily arbitrate which they rejected). Moreover, both *Kramer* and *Soto* were decided before the Supreme Court's pronouncement in *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013), where the Court emphasized that that arbitration is a "matter of contract" and that courts must "rigorously enforce" an arbitration agreement unless it has been "overridden by a contrary congressional command."[31]

The remaining cases cited by the Arbitration Plaintiffs are either inapplicable or actually support AHM's position:

---

[27] *See* Opp. at 9.
[28] *See, e.g., AT&T LLC v. Concepcion*, 131 S. Ct. 1740, 1753 (2011) (reversing and remanding Ninth Circuit's ruling affirming refusal of California District Court's failure to grant motion to compel arbitration) .
[29] *See Kramer*, 705 F.3d at 1132-33.
[30] *Kramer*, 705 F.3d at 1125.
[31] *Italian Colors*, 133 S. Ct. at 2309.

11

- *Bongaards v. Millen* (cited at Opp. at 10) had nothing to do with arbitration. Rather, it involved a surviving spouse who was intentionally left out of his deceased wife's estate.[32] Nevertheless, he sought access to the assets of a trust that his wife's mother had set up for her grandchildren. He argued that under the doctrine of equitable estoppel, the wife's estate should be forced to ignore the trust's existence and to treat its assets as being owned directly by the deceased wife, all so that he could get his spousal elective share under Massachusetts' statute. The court rejected his contention because nothing in his deceased wife's conduct could possibly have been construed to have induced him to believe he would have received a share of the trust on her death.[33]

- The only other Massachusetts case cited by the Arbitration Plaintiffs (Opp. at 2, 11) actually supports compelling arbitration here, and even the Arbitration Plaintiffs concede that the case demonstrates that courts outside the Sixth Circuit apply a "broad[] test" when determining whether equitable estoppel applies.[34] In *Machado v. System4 LLC*, the Supreme Judicial Court of Massachusetts held that a nonsignatory franchisor could compel arbitration against plaintiffs who had signed franchise agreements containing arbitration clauses.[35] The court reasoned that because the plaintiffs' claims (as here) "referred to" and "presumed the existence of" the written agreements containing arbitration clauses, they could not escape arbitration of their claims.[36]

- *Goldman v. KPMG LLP* (cited at Opp. at 2, 11) is similarly unavailing.[37] In that case, plaintiff investors sued lawyers and accountants who allegedly colluded with investment advisors to induce the investors into investing in fraudulent tax shelters. The tax shelter required the plaintiff investors to become members in limited liability companies that had standard operating agreements with arbitration clauses. The lawyers and accountants had no involvement with the limited liability companies, but did supply opinion letters stating that the tax shelters were legal. The court held that plaintiffs were not equitably estopped from avoiding arbitration because their claims against the lawyers and accountants were completely "unrelated to any of the obligations in the operating agreements, which were merely a procedural and collateral step in the creation of the fraudulent tax shelters . . . The complaints do not rely on or use any terms or obligations of the operating agreements as a foundation for their claims; indeed, the operating agreements are not even mentioned in the complaints."[38]

---

[32] 793 N.E.2d 335, 338 (Mass. 2003).

[33] *Id.* at 338-340.

[34] Opp. at 11.

[35] 28 N.E.3d 401, 409.

[36] *Id.*

[37] 92 Cal. Rptr. 3d 534 (Cal. Ct. App. 2009).

[38] *Goldman*, 92 Cal. Rptr. 3d at 540-41.

In this case, the Arbitration Plaintiffs' claims plainly "refer to, presume the existence of, and rely upon" the Purchase Agreements and December 2015 Invoice, all of which contain enforceable arbitration provisions. Thus, AHM respectfully submits the Court should find more persuasive the holdings in *Agnew*, *Ford Motor*, and *Geier* and reject the outdated and distinguishable caselaw on which the Arbitration Plaintiffs' rely.

### III. The Magnuson-Moss Warranty Act Does Not Allow the Arbitration Plaintiffs to Avoid Arbitration

The Arbitration Plaintiffs do not attempt to refute – nor can they – that they voluntarily entered into agreements to arbitrate their claims. They also do not deny that the arbitration agreements that they knowingly entered into are valid. Rather, in a last gasp to evade arbitration, they make arguments based on contested agency determinations and rely on case law that predates relevant Supreme Court jurisprudence, which unequivocally endorses arbitration unless there is clear congressional intent to the contrary.

#### A. Congress Has Clearly Expressed Its Intent that It Favors Arbitration and Supreme Court Jurisprudence Reinforces this Preference for Arbitration.

Although the Sixth Circuit has not addressed whether an MMWA claim is subject to binding arbitration based on valid arbitration agreements, the courts of appeal that have faced the issue have unanimously concluded that the MMWA does *not* preclude binding arbitration. *See, e.g., Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268 (11th Cir. 2002); *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470 (5th Cir. 2002).

##### 1. *Congress Did Not Intend to Prohibit Arbitration of MMWA Claims.*

"There is no doubt that Congress has expressed a clear intention in favor of arbitration for contractual claims." *Walton*, 298 F.3d at 475-479 (citing 9 U.S.C. § 2).[39] Thus, the inquiry

---

[39] 9 U.S.C. § 2 provides that a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the

13

becomes whether Congress expressed contrary intent regarding claims arising under the MMWA. *Walton*, 298 F.3d at 475. In ascertaining whether "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue," courts evaluate three factors: (1) the statute's text, (2) its legislative history, and (3) whether there is an "inherent conflict between arbitration and the statute's underlying purpose." *McMahon*, 482 U.S. at 226. The Arbitration Plaintiffs bear the burden of overcoming the presumption in favor of arbitration by demonstrating that Congress intended to preclude arbitration. *Id*. They have wholly failed to satisfy that burden.

As both the *Davis* and *Walton* courts recognized, the MMWA does not even mention binding arbitration. *Davis*, 305 F.3d at 1274; *Walton*, 298 F.3d at 475. Similarly, the legislative history does not "specifically discuss the availability of arbitration." *Walton*, 298 F.3d at 475; *see also Davis*, 305 F.3d at 1275. While it does reference "informal dispute settlement procedures," this can hardly be said to indicate Congress' intention to preclude arbitration as courts have appropriately recognized that "binding arbitration is not normally considered a formal procedure." *Walton*, 298 F.3d at 477. Finally, there is no inherent conflict between arbitration and the MMWA's purpose to "improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products," *see* 15 U.S.C. § 2302(a), as consumers are able to completely vindicate their rights during arbitration proceedings.

There simply is no indication from the MMWA's text, legislative history, or purpose that Congress intended to go against its clear intention in favor of arbitration and create an exception

---

whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").

for claims brought pursuant to the MMWA. The Arbitration Plaintiffs willingly contracted to arbitrate their claims. They should be ordered to carry out their end of those contractual bargains.

### 2. *The Arbitration Plaintiffs' Cited Authority Predates Relevant Supreme Court Law.*

In support of their argument that the MMWA allows them to evade the arbitration that they agreed to, Plaintiffs rely on two federal Ohio district court cases, *Higgs v. Warranty Group*, No. C2-02-1092, 2007 WL 2034376 (S.D. Ohio July 11, 2007) and *Rickard v. Teynor's Home, Inc.*, 279 F. Supp. 2d 910 (N.D. Ohio 2003). The courts in these cases, however, ruled without the benefit of the Supreme Court's pronouncements in *Italian Colors* and *Concepcion*. In both cases, the Supreme Court "indicated a strong preference for arbitration," as recognized by FTC Commissioner Maureen K. Ohlhausen when she voted *against* the revised interpretation of the MMWA "because it retains Rule 703.5(j)'s *prohibition on pre-dispute mandatory binding arbitration*" – the precise issue before this Court. *See* 80 F.R. 42710-01 at 42723 (June 20, 2015) (emphasis added).

In *Concepcion*, the Supreme Court held that "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." 131 S. Ct. at 1742 (internal citations omitted). The Supreme Court in *Italian Colors* held that "courts must 'vigorously enforce' arbitration agreements according to their terms." *Id*. at 2309. According to the Court, this "holds true for claims that allege a violation of a federal statute, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *Id*. As discussed *supra*, Congress did not even address binding arbitration in the MMWA. Therefore, it cannot be said that there is anything in the MMWA that changes Congress' otherwise clear, express intention in favor of arbitration for contractual claims. Consequently, the Supreme Court's directive should

15

be heeded, and the Arbitration Plaintiffs should be ordered to arbitrate all of their claims – including their MMWA claims – as they agreed to do.

### B. The Arbitration Plaintiffs' Non-MMWA Claims[40] Do Not Fall Within the Scope of the MMWA

Assuming *arguendo* the Court were to find that the MMWA bars arbitration of the Arbitration Plaintiffs' MMWA claims (though it does not), it still must order to arbitration all other pending claims. Even the Arbitration Plaintiffs acknowledge that the case law on which they rely dictates this result.[41] They nonetheless claim that "[n]othing in the MMWA or the FTC regulations mandates such a limitation, as the requirement that informal dispute resolution procedures be included in written warranties applies to 'warrantors' and 'consumer disputes,' not just disputes brought under the MMWA."[42] What they fail to point out, however, is their position directly contravenes controlling authority from the United States Supreme Court, which has expressly held that when a complaint contains both arbitrable and non-arbitrable claims, the appropriate procedure is to compel arbitration of the claims that are subject to arbitration, "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Cocchi*, 132 S. Ct. at 26; *see also Answers in Genesis of Ky., Inc.*, 556 F.3d at 472 (affirming district court's order compelling arbitration).

In this case, the MMWA does not actually operate to prevent enforcement of the arbitration provisions by their terms, but even if it did, the rest of the Arbitration Plaintiffs'

---

[40] They include: Plaintiff Julia Hsi's claim for Unlawful, Unfair, and Fraudulent Business Practices (Count Four), claim for violation of the Consumer Legal Remedies Act (Count Five), and claim brought pursuant to the Song-Beverly Consumer Warranty Act (Count Seven); Plaintiff Robert Fennes' claim for violation of the Florida Deceptive and Unfair Trade Practices Act (Count Nine), Plaintiff Michael Prychitko's claim for violation of the Michigan Consumer Protection Act (Count Thirteen); and Michelle and Robert Bergendahl's claim for violation of the Oregon Unlawful Trade Practices Act (Count Seventeen).

[41] *See* Pls.' Opp. at 19 (stating that "*Rickard* limited its holding to claims brought pursuant to written warranties and did not bar arbitration of the plaintiffs' state consumer law claim.").

[42] *Id.* n.2.

claims are still subject to arbitration, and they should be compelled to arbitration without further delay. *Cocchi*, 132 S. Ct. at 26.

## IV. Conclusion

For the foregoing reasons and the reasons set forth in the Motion, AHM respectfully requests that this Court compel arbitration and stay the claims of the Arbitration Plaintiffs pending the outcome of the arbitrations. AHM respectfully requests such other and further relief as this Court deems appropriate.

Dated: August 19, 2016

Respectfully submitted,

/s/James A. Wilson
Livia M. Kiser (*pro hac vice*)
lkiser@sidley.com
J. Simone Jones (*pro hac vice*)
Simone.jones@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853.7000
Facsimile: (312) 853.7036

Michael L. Mallow (*pro hac vice*)
mmallow@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Tel: (213) 896-6666
Fax: (213) 896-6600

James A. Wilson (0030704)
jawilson@vorys.com
VORYS, SATE, SEYMOUR & PEASE
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216
Tel: (614) 464-5606
Fax: (614) 719-5039

*Attorneys for Defendant American Honda Motor Co., Inc.*

17

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing was filed electronically through the Court's CM/ECF System this 19th day of Augsut, 2016. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system.

/s/ James A. Wilson  
James A. Wilson  (0030704)
