# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

|  |  |
|---|---|
| In re: American Honda Motor Co., Inc., CR-V Vibration Marketing and Sales Practices Litigation | Case No. 2:15-md-2661 |
|  | Judge Michael H. Watson Chief Magistrate Judge Deavers |
| This document relates to:  ALL CASES |  |

## PLAINTIFFS' UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Plaintiffs Michael Stanley, Robert Fennes, Emily Vellano, Julia Hsi, Thomas Prychitko, Robert Nonni, Bakh Inamov, Michelle and Robert Bergendahl, Amy Bertram, and Aleksandr Kogan have reached a proposed class action settlement with Defendant American Honda Motor Co., Inc. They now move this Court for an order: (i) preliminarily approving the proposed Settlement (all capitalized terms in these moving papers shall be defined as set forth in the parties' Settlement Agreement unless otherwise stated), which is attached as Exhibit 1 to the accompanying declaration of Eric H. Gibbs (the "Gibbs Decl."); (ii) certifying the proposed Settlement Class pursuant to Fed. R. Civ. P. 23(b)(2); (iii) appointing Class Counsel for the Settlement Class; (iv) appointing Honda as Settlement Administrator to perform required duties under the Settlement; (v) directing that the Settlement Class be notified of the proposed Settlement, pursuant to Fed. R. Civ. P. 23(c)(2)(A) and 23(e)(1), in the form and manner proposed by the parties; and (vi) scheduling a final fairness hearing, at which the Court will consider whether the Settlement should be finally approved and will consider Plaintiffs' counsel's application for an award of attorneys' fees and reimbursement of litigation expenses.

Respectfully submitted,


 */s/ Eric. H. Gibbs*

Eric H. Gibbs (*pro hac vice*)
David Stein (*pro hac vice*)
Amy Zeman (*pro hac vice*)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone:     (510) 350-9700
Facsimile:     (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
amz@classlawgroup.com

*Interim Lead Counsel*

Mark H. Troutman (0076390)
Gregory M. Travalio (0000855)
Shawn K. Judge (0069493)
**ISAAC WILES BURKHOLDER &
TEETOR LLC**
Two Miranova Place, Suite 700
Columbus, Ohio 43215
Telephone:     (614) 221-2121
Facsimile:     (614) 365-9516
mtroutman@isaacwiles.com
gtravalio@isaacwiles.com
sjudge@isaacwiles.com

*Liaison Counsel*

<u>**MEMORANDUM IN SUPPORT**</u>

**I.    INTRODUCTION**

     This litigation began after hundreds of 2015 Honda CR-V owners publicly complained that their vehicles were vibrating excessively.  Although the vibration typically manifested soon after purchase, some nine months after the Class Vehicles hit the market, Honda had still not implemented a remedy for the problem.  Accordingly, Plaintiffs sent Honda a pre-lawsuit demand letter and filed lawsuits across several states—each requesting that Honda acknowledge the vibration and offer free repairs under warranty.  After several lawsuits had been filed, but before the Judicial Panel for Multidistrict Litigation concluded that the lawsuits should be centralized before this Court, Honda began issuing repair bulletins, setting forth repairs to address the vibration.  At that time, some 2015 CR-V owners were able to obtain the repairs, but Honda did not publicize the repairs to the degree Plaintiffs believed appropriate. As a result, Plaintiffs' allege many CR-V owners and lessees—including those who had previously been told that repairs were unavailable—continued to experience the vibration.  Some dealerships mistakenly continued to turn owners away, believing no repair solution existed.  Such events created confusion as to whether repairs existed, and whether they would be covered by warranty.

     Plaintiffs are pleased to report that the parties have reached a settlement requiring Honda to make information more publicly available to CR-V owners and lessees regarding the vibration issue and informing them that repairs are available to address the issue if experienced and that Honda's limited powertrain and limited emissions warranties cover different aspects of the repairs for periods longer than the basic manufacturer's warranty.  Honda will be required to (i) send letters to any 2015 Honda CR-V owners and lessees who have complained about the vibration (whether to Honda or to Plaintiffs' counsel) and have not received available repairs; (ii)

1

include a prominent post on the Honda CR-V Owner Link website for one year setting forth the repair options available; (iii) pay for optimized web search results for 180 days to direct 2015 CR-V owners and lessees to that website; and (iv) send four quarterly bulletins to Authorized Honda Dealers reminding them about the availability of the free warranty repairs.  Honda's repairs have proven effective for the vast majority of 2015 CR-V owners and lessees, but because the parties are settling on behalf of a Fed. R. Civ. P. 23 (b)(2) Settlement Class—with no release of monetary claims—those with unique situations will remain free to seek individualized monetary relief.  To that end, Honda will also inform 2015 Honda CR-V owners and lessees through the Customer Outreach Program that they can participate in a streamlined dispute resolution process free of charge if they remain dissatisfied after receiving the appropriate repairs.

Plaintiffs believe the parties' settlement to be in the best interests of 2015 CR-V owners and lessees as a class because it will help them obtain any needed repairs, will help them understand and enforce their warranty rights, and will avoid the risks and delay associated with further litigation.  Accordingly, Plaintiffs ask that the Court preliminarily approve the settlement and enter the accompanying Proposed Order, which will allow the parties to begin notifying Settlement Class Members of the settlement, provide an opportunity for any objections, and set a schedule for final settlement approval.

## II.     BACKGROUND

### A.     Plaintiffs' Allegations About The 2015 Honda CR-V Vibration

Honda introduced the 2015 CR-V in October 2014.  (Second Consolidated Amended Complaint [ECF No. 29] ("2AC"), ¶ 42.)  Soon thereafter, some drivers began complaining about the vibration.  (*Id.*, ¶ 40.)  Not all 2015 CR-V owners and lessees experienced the issue, and those who did reported differing levels of severity and varying types of vibration: some

2

reported vibrations while idling, others while accelerating, and others while driving at highway speeds.  (*Id.*)  But while the issue may not have been universal, it was a rather vexing one for those whose 2015 CR-Vs kept shaking.  Hundreds went so far as to lodge formal complaints with the National Highway Traffic Safety Administration (NHTSA), with several commenting that the vibrations were so bad they caused nausea, migraines, and back pain.  (*Id.*; Gibbs Decl., ¶ 18.)

Many consumers noticed the vibrations immediately, either as they drove home from the dealership or the next day.  (2AC, ¶ 40.)  But for over a year after Honda released its 2015 CR-V, no repairs were available that could solve the problem.  Some consumers report they were told that the vibrations were normal, that the vehicle just needed to be broken in, and that a fix was neither needed nor available.  (*Id.*, ¶¶ 40, 45.)  Even after one Plaintiff served Honda with a pre-lawsuit demand letter formally requesting that Honda publicly acknowledge the vibration issue and offer consumers a remedy, Honda declined to take action in response to the letter.  (Gibbs Decl., Exs. 2-3; JPML Order [ECF No. 1].)  Instead, in reaction to the demand letter Honda represented that "there was no defect present," that the vibration "has no adverse effect on the drivability or safety of the vehicle," and that therefore "no consideration can be made at this time." (Gibbs Decl., Ex. 3.)

### B.     Honda's Fix for Vibration Issues

In August 2015, Honda issued a repair bulletin to dealers identifying the vibration issues and instructing dealerships on what repairs to perform for vehicles that were vibrating when driving at high speeds. While Honda had been working for some time to develop countermeasures for vibrations that were caused by the other two modes, it did not have a countermeasure developed at the time the first repair bulletin was issued. Then, in November 2015, shortly after Plaintiffs' lawsuits were centralized before this Court for pre-trial

proceedings, Honda released an updated, comprehensive repair bulletin that instructed dealers about all available repairs to address the vibration, including for those vehicles experiencing the vibration at idle.  Under Technical Service Bulletin 15-046, Honda detailed three sets of repairs depending on the engine and vehicle speed at which a particular CR-V was vibrating.  (2AC, ¶¶ 48-50.)  The bulletin told dealers providing the repairs that Honda's "normal warranty applies." (Gibbs Decl., ¶ 7.)  This was a welcome development, from Plaintiff's perspective.  But the problem remained that 2015 CR-V customers, particularly those that visited a dealer before the TSB was issued, might not have learned about the remedies that were developed and available to address the vibration issue.  (2AC, ¶¶ 5, 53-55.)  Plaintiffs had asked that Honda notify CR-V owners and lessees of the vibration problem and offer them a free fix, but Honda chose instead to provide the bulletin only to dealers and service technicians.  (*Id.*, ¶¶ 48, 54.)  Apart from unpublicized YouTube videos, Plaintiffs believe Honda made no effort to notify drivers about its change in warranty policy and the availability of free repairs.  (*Id.*, ¶¶ 45-46.)  Accordingly, many drivers—including those who were previously told by Honda dealers that nothing would be done about their vibrations—continued to needlessly drive around in vibrating vehicles.  (*Id.*, ¶¶ 54-55.)  To this day, 2015 CR-V owners and lessees continue to lodge complaints with the NHTSA and contact Plaintiffs' counsel about the vibration—unaware that a free fix is available. (Gibbs Decl., ¶¶ 8, 18.)

### C.    Litigation and Settlement

Plaintiffs' Second Consolidated Amended Complaint alleges that by failing to adequately inform consumers that the 2015 CR-V is prone to excessive vibration, or that its warranty policy provides free repairs, Honda violated the Magnuson-Moss Warranty Act, fourteen states' consumer protection laws, and California's secret warranty law.  (2AC, ¶¶ 142-320.)  In particular, Plaintiffs acknowledged that Honda had recently begun offering free repairs, but

alleged "Honda has not publicized the availability of these repairs" and "the many drivers who were previously turned down by dealerships for warranty coverage [were] not told to now return for warranty-covered repairs." (*Id.*, ¶ 5.) Plaintiffs sought "to enjoin Honda from continuing to conceal the problem and the availability of repairs from consumers, and to obtain damages, restitution, and all other available relief." (*Id.*, ¶ 6.)

Before filing their Second Consolidated Amended Complaint on March 3, 2016, Plaintiffs sent Honda a pre-amendment letter formally requesting that Honda notify all Honda CR-V owners that repairs had become available to remedy the vibration, and that the repairs would be provided at no charge under warranty. (Gibbs Decl., Ex. 4.) Honda declined and moved to dismiss Plaintiffs' complaint on several grounds. (ECF No. 35.) Among other things, it argued that disclosing the existence of free repairs on YouTube was sufficient and that its recent alert to dealers that they could provide free repairs did not constitute a secret warranty requiring notice. (*Id.* at 3-5, 20.) Honda also moved to compel several Plaintiffs to arbitrate their claims on an individual basis, rather than pursue judicial relief on a class-wide basis. (ECF No. 50.)

The parties explored the possibility of settlement while Honda's motions remained pending. After several months of discovery and preliminary settlement talks, the parties participated in two days of formal mediation with Frank A. Ray on March 7 and March 8, 2017. (Gibbs Decl., ¶ 12.) With Mr. Ray's assistance, the parties reached an agreement in principle, which they have since memorialized in the Settlement Agreement now before the Court.[1]

---

[1] Eleven of the seventeen Plaintiffs in this litigation fully approve the settlement and wish to participate (they are Plaintiffs Michael Stanley, Robert Fennes, Emily Vellano, Julia Hsi, Thomas Prychitko, Robert Nonni, Bakh Inamov, Michelle and Robert Bergendahl, Amy Bertram, and Aleksandr Kogan). The six Plaintiffs who are represented by the Chicago lawyers not selected by this Court to serve as lead counsel have all uniformly declined to sign on to the agreement (they are Melissa Cushing, Patricia Flanigan, John Matiscik, Richard Beaulieu, Vivian Romaya, and David Maxim).

III.     **OVERVIEW OF THE SETTLEMENT**

A.      **The Settlement Class**

If approved by the Court, the proposed Settlement would provide injunctive relief to the

following Settlement Class, which the parties propose be certified pursuant to Fed. R. Civ. P.

23(b)(2):

> All persons or entities who own or lease any Settlement Class Vehicle in the
> United States, including its territories and Puerto Rico.
>
> Excluded from the Settlement Class are Honda, any entity that is a subsidiary of
> or is controlled by Honda anyone employed by Class Counsel; any judge to whom
> this case is assigned, his or her spouse, and members of the judge's staff; and
> anyone who purchased a Settlement Class Vehicle for the purpose of resale.

(Gibbs Decl., Ex. 1 ("Settlement"), ¶ 3.)

B.      **Injunctive Relief Requiring Honda To Publicize Free Repairs**

To resolve the pending lawsuit, Honda consents to an injunction requiring it to apprise

Settlement Class Members—through a comprehensive Customer Outreach Program—that 2015

CR-Vs may experience vibrations, that repairs are available to remedy those vibrations, and that

the repairs will be covered by Honda's limited powertrain and limited emissions warranties.

(Settlement, ¶¶ 4.1-4.2, Ex. 1-D (Injunctive Relief Order).)  This Customer Outreach Program

would begin within 45 days of preliminary approval and include:

1.  A prominent posting on Honda's Owner Link website for one year, (*id.*, ¶
    4.3.1, Ex. 1-G);

2.  Web optimizations for one year to ensure that relevant Google searches
    list the Honda Owner Link website on the first page of results, (*id.*, ¶
    4.3.2);

3.  Quarterly messages to Authorized Honda Dealers, for one year, reminding
    them about the vibration and the available repairs and warranty coverage,
    (*id.*, ¶ 4.3.5, Ex. 1-I);

4.  Emails to those who complained to Honda about 2015 CR-V vibration but
    who have not received all available repairs, (*id.*, ¶ 4.3.3, Ex. 1-J); and

6

5. Emails to all individuals who contacted Class Counsel regarding 2015 CR-V vibration, but who have not received all available repairs (*id.*, ¶ 4.3.4, Ex. 1-K).

In each of the above notices, Honda will convey that: (i) some 2015 CR-V drivers experienced vibration at the engine speeds listed in the Service Bulletin; (ii) repairs are available for the vibration; (iii) repairs are being provided free of charge under applicable warranties (along with the length of those warranties); and (iv) Settlement Class Members may take advantage of a streamlined informal dispute resolution process with Honda free of charge, if they remain dissatisfied after the repairs. (Settlement, ¶ 4.3.)

**C.      Limited Class-Wide Release**

In exchange for Honda's agreement to engage in the comprehensive Customer Outreach Campaign outlined above, the Settlement Class will release only their injunctive relief and declaratory relief claims arising from Honda's alleged failure to provide sufficient notice of the existence and availability of the vibration repairs set forth in TSB 15-046. (Settlement, ¶¶ 1.22(4), 2.25, 8.4, 8.6.) Only the individual Plaintiffs will release claims for monetary relief. (*Id.*, ¶¶ 1.22(3), 2.20, 8.3, 8.5.) In exchange for that release, Honda has agreed to provide payments to Plaintiffs in the amount of $2,500 each. (*Id.*, ¶ 2.14.)

**D.      Notice Program**

The parties have prepared a long-form Notice of the Settlement to be made available to Settlement Class Members to provide information about the litigation, the Settlement, and their rights. (Settlement, Ex. 1-H.) Within forty-five days after preliminary approval, Honda will establish a Settlement Website that contains the preliminary approval order, the Notice, the Settlement Agreement, and other relevant information regarding the litigation. (*Id.*, ¶ 7.2.) The Settlement contemplates that traffic will be driven to the Settlement Website in a variety of ways. The Honda's Owner Link website and emails to Settlement Class Members will note the

existence of the litigation and the Settlement, as well as the web address for the Settlement Website and the toll-free number Honda will maintain so Settlement Class Members can call with questions and receive answers in both English and Spanish. (*Id.*, ¶¶ 7.3-7.4.) Honda will also purchase keyword and phrase sponsorship related to the litigation on popular internet search engines for a 180-day period so that Settlement Class Members who use those search terms will be directed to the settlement website. (*Id.*, ¶ 7.2.1.)

### E. Attorneys' Fees and Litigation Expenses

After reaching an agreement in principle as to the scope of class-wide relief and the corresponding release, the parties have engaged in negotiations to resolve Plaintiffs' counsel's award of attorneys' fees and reimbursement of litigation expenses. (Gibbs Decl., ¶ 20.) The parties thus far have not been able to agree to terms on fees and costs. (*Id.*) Plaintiffs intend to resume negotiations following preliminary approval and hope the parties will be able to present a compromise fee and costs application for Court approval. In the event that no agreement is reached in that respect, Plaintiffs' counsel will file their fee application in advance of the Settlement Class Member objection deadline, to be considered at or around the same time as the final settlement approval motion. (*Id.*)

## IV. ARGUMENT

### A. The Settlement Class Should Be Certified Under Fed. R. Civ. P. 23(b)(2)

When presented with a class settlement prior to a decision on class certification, the Court must ensure that the proposed settlement class satisfies the requirements of Fed. R. Civ. P. 23(a) and one of the subsections of Fed. R. Civ. P. 23(b). *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 625 (6th Cir. 2007). Here, the parties' proposed Settlement Class may properly be certified under Fed. R. Civ. P. 23(a) and 23(b)(2).

1.    **The Settlement Class Satisfies Fed. R. Civ. P. 23(a)**

The prerequisites for class certification under Fed. R. Civ. P. 23(a) are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation, each of which is satisfied here.  Fed. R. Civ. P. 23(a); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013).

a)    **Numerosity**

The Settlement Class encompasses approximately 340,000 vehicles, (Gibbs Decl., ¶ 13, Ex. 5), and so it readily satisfies the requirement that "joinder of all members [be] impracticable."  Fed. R. Civ. P. 23(a)(1); *In re Whirlpool Corp.*, 722 F.3d at 852 ("While no strict numerical test exists to define numerosity under Rule 23(a)(1), 'substantial' numbers of affected consumers are sufficient to satisfy this requirement.").

b)    **Commonality**

The Settlement Class also meets the commonality requirement because Settlement Class Members' legal claims against Honda share questions of law and fact.  Fed. R. Civ. P. 23(a)(2). Consumer class actions alleging a widespread defect typically raise common issues, and this case is no exception.  *See, e.g., In re Whirlpool Corp.*, 722 F.3d at 853 (common question whether alleged design defect in washing machines caused mildew); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006) (common questions included whether vehicles prone to accelerator sticking were defective and whether written warranties covered the issue).  Among the questions Settlement Class Members' claims have in common are: (i) whether the 2015 CR-V is prone to vibration; (ii) whether Honda knew or should have known about the vibration; (iii) whether the vibration is material, such that Honda has a legal duty to disclose it; and (iv) whether Honda sufficiently notified 2015 CR-V owners about the availability of repairs that would be covered under warranty.

9

### c)    Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement is similar to the commonality requirement and is generally met when the named plaintiffs' and class members' claims arise from the same course of conduct or are based on the same legal or remedial theory.  *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 509 (6th Cir. 2015), *cert. denied,* 136 S. Ct. 1493 (2016).  Here, Plaintiffs and Settlement Class Members each have claims that arise from Honda's sale of 2015 CR-Vs alleged to be prone to vibration and from its failure to disclose that vibration at the time of sale.  The fact that the vibration manifests for some CR-V owners but not for others does not affect the typicality analysis.  *In re Whirlpool Corp.*, 722 F.3d at 857.  Because Plaintiffs are pursuing legal theories and remedies that apply to all owners and lessees of Class Vehicles—who have a right to receive notice of material facts concerning their vehicle—Plaintiffs' claims are sufficiently aligned with those of the class.

### d)    Adequacy

Class representatives are adequate when it "'appear[s] that [they] will vigorously prosecute the interests of the class through qualified counsel,' which usually will be the case if the representatives are 'part of the class and possess the same interest and suffer the same injury as the class members.'"  *Int'l Union*, 497 F.3d at 626 (quoting *Senter v. Gen. Motors Corp*., 532 F.2d 511, 525 (6th Cir. 1976).  Here, Plaintiffs are members of the proposed Settlement Class, they have the same interests and suffered the same injury as other CR-V owners and lessees, and they have vigorously pursued the class's interests through Court-appointed counsel for over two years.  Likewise, they are represented by Court-appointed counsel who vigorously advanced their interests and whom this Court has previously found to be well qualified to represent them in this multidistrict litigation.  (CMO No. 2 [ECF No. 15]; Gibbs Decl., ¶ 19.)

### 2. The Settlement Class Satisfies Fed. R. Civ. P. 23(b)(2)

In addition to meeting the requirements of Fed. R. Civ. P. 23(a), Plaintiffs also satisfy Fed. R. Civ. P. 23(b)(2), which authorizes class certification where a defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." As alleged in Plaintiffs' Second Consolidated Amended Complaint, and discussed in some detail above, Honda's alleged failure to adequately inform customers about vibration concerns and available remedies applies generally to the Settlement Class. The Injunctive Relief Order contemplated by the parties' Settlement directly addresses that omission for the class as a whole, making class certification under Fed. R. Civ. P. 23(b)(2) appropriate.

### B. The Settlement Should Be Preliminarily Approved

Before the Settlement can be approved, the Settlement Class Members who will be bound by its terms must be notified and given an opportunity to object. Fed. R. Civ. P. 23(e). This notification process takes time and can be costly, so it has become customary for courts to conduct a preliminary fairness review before the parties embark on the lengthy and expensive process of notifying class members of the settlement. *See* Newberg on Class Actions § 13:10 (5th ed.); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 372 (S.D. Ohio 2006). If the Court has any concerns about the proposed settlement that may lead it not to grant final approval, the preliminary approval process provides the Court with an opportunity to raise those concerns immediately. The parties can then either address those concerns before notice is disseminated or return to litigation without further delay.

In assessing whether a proposed class settlement is fair, adequate, and reasonable, the following factors are typically considered:

1. Plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement;

2. The complexity, expense, and likely duration of the litigation;

3. The stage of the proceedings and the amount of discovery completed;

4. The judgment of experienced trial counsel;

5. The nature of the negotiations;

6. The objections raised by the class members; and

7. The public interest.

*In re Broadwing*, 252 F.R.D. at 372; *Int'l Union*, 497 F.3d at 625.  The extent and substance of any objections raised by Settlement Class Members cannot be evaluated until notice has been disseminated, but in Plaintiffs' view, the remaining factors confirm the settlement as advantageous to the class and worthy of judicial approval.

   1. **Likelihood of Success Balanced Against the Relief Offered by the Proposed Settlement**

     a) **Likelihood of Ultimate Success on the Merits**

When the litigation started in 2015, Plaintiffs' claims for injunctive relief were reasonably strong.  Plaintiffs sought an order requiring Honda to acknowledge vibration problems in the 2015 Honda CR-V, notify owners of the issue, and provide free repairs under warranty.  They had amassed a large number of consumer complaints, suggesting that the vibrations Plaintiffs had experienced were not isolated incidents, but rather the result of a known issue that Honda had failed to disclose.  They could make strong arguments that Honda had a legal obligation to disclose that type of material fact under state consumer protection laws.  And they could mount a convincing case that Honda was obliged to correct the resulting vibrations free of charge under its written warranties.

After Honda developed countermeasures and began to provide 2015 CR-V owners with free repairs, Plaintiffs' case for injunctive relief changed, but Plaintiffs still believe their demands for injunctive relief are likely to succeed.  Plaintiffs can still show that many 2015 CR-V owners and lessees remain unaware that free repairs are available to correct their vibration problems—often because Honda dealership previously told them that their vibrations were normal or that no solution was available.  An order requiring Honda to issue a more extensive disclosure is thus still necessary to correct the consequences of its alleged prior violation of state consumer protection and warranty laws.  Potential pitfalls exist—including variations in state laws, arbitration provisions in some consumers' sales contracts, and other issues raised in Honda's pending motions.  But the main problem, from Plaintiffs' point of view, is that despite the passage of time, many Honda owners are not aware that countermeasures exist to address vibration issues they may be experiencing.  The 2015 CR-V owners and lessees need to know that free repairs are available now—not several years down the road at the possible conclusion of this litigation.

Plaintiffs' claims for monetary relief, on the other hand, are less certain.  Honda dealers did not charge for vibration repairs. Customers either were denied a repair altogether (at the outset of the case) or were provided free repairs under warranty (starting in late 2015).  So Settlement Class Members generally do not have out-of-pocket damages that could be recovered at the conclusion of the case.  Plaintiffs could attempt to recover damages by arguing that all CR-V owners are entitled to point-of-sale damages—*i.e.*, the difference in market value between the non-defective 2015 CR-Vs they were promised and the 2015 CR-Vs they actually received.  Proving point-of-sale damages on a class-wide basis could be challenging here, given that Honda will likely argue that: (i) many 2015 CR-V owners appear not to have experienced any vibration

13

(and this is not a safety defect case, such that the possibility of future manifestation poses lingering concern); (ii) those that did suffer from vibrations reported several different types, which varied in frequency and magnitude; (iii) Honda began offering free repairs early in the vehicles' lifespan; and (iv) based upon information exchanged between the parties, those repairs have proven effective in the vast majority of cases.  (Gibbs Decl., ¶¶ 7, 17.)  Under these circumstances, it could be challenging to prove that all Settlement Class Members received vehicles of diminished market value.  And it would be challenging to identify and compensate only those 2015 CR-V owners who continue to experience excessive vibration; filtering out those 2015 CR-Vs that may be worth less as a result of persistent vibrations from those that are performing as warranted could require individualized proof—undermining the efficiencies that otherwise might be gained from class treatment.

### b)    The Relief Offered in Settlement

The proposed settlement would resolve Plaintiffs' relatively strong injunctive relief claims, and do so at a time when the Customer Outreach Program will be useful to Settlement Class Members.  Honda will be required to disclose the availability of free vibration repairs in a variety of different ways: (i) a prominent post on the Honda CR-V Owner Link website, with optimized web search results, (ii) quarterly messages to Authorized Honda Dealers, and (iii) emails to the 2015 CR-V owners who have complained.  (Settlement, ¶¶ 4.3.1-4.3.5.)  This form of relief is well-calibrated to reach the 2015 CR-V owners who can benefit from information about the repairs and their warranty rights, and will in effect give Plaintiffs much—if not all—of the injunctive relief they could have received following trial.

At the same time, the Settlement will not compromise individual 2015 CR-V owners' monetary claims.  Most Settlement Class Members never had a vibration problem, have already received a free repair after the litigation commenced, or will receive a free repair as a result of

14

the proposed settlement.  But those who wish to pursue monetary damages resulting from unique

circumstances will remain free to do so.  In fact, the settlement will make sure that those 2015

CR-V owners know how they can pursue monetary damages.  Honda will be required to inform

Settlement Class Members that, to the extent they remain dissatisfied with vibration in their 2015

CR-Vs, they may take advantage of the streamlined dispute resolution process available to them

by mediating or arbitrating their individual claims with Honda free of charge.  (Settlement, ¶

4.3.)

### 2.    Complexity, Expense, and Likely Duration of the Litigation

Most class actions are inherently complex, and this case is no exception.  Plaintiffs'

Second Consolidated Amendment Complaint includes twenty-one claims under nine states' laws

and involved technical subject matter that would have required extensive expert testimony to

resolve.  Honda had already raised standing and arbitration issues at the pleading stage and

would undoubtedly have raised even more as the litigation progressed to the class certification

stage and beyond.  At each stage, the Settlement Class's claims would encounter added risk, the

costs of litigation would continue to rise, and more and more time would pass—all while

Settlement Class Members needlessly continue to drive vehicles suffering from correctible

vibrations.  By settling now, 2015 CR-V owners will receive the repairs they need sooner rather

than later, and both the risk and cost associated with further litigation can be avoided.  *See In re*

*Nationwide Fin. Servs. Litig.*, No. 2:08-CV-00249, 2009 WL 8747486, at *4 (S.D. Ohio Aug. 19,

2009) ("[A]voiding the delay, risks, and costs of continued litigation against a defendant is a

valid reason for counsel to recommend and for the court to approve a settlement.").

### 3.    Stage of Proceedings and Discovery Completed

To ensure that Plaintiffs had sufficient information to evaluate their case and to assess the

adequacy of the proposed settlement, courts also consider the stage of the proceedings and the

discovery completed. *In re Broadwing*, 252 F.R.D. at 374. Here, the parties engaged in highly focused and critical formal and informal discovery, which included extensive empirical data, before settling. Plaintiffs heard from hundreds of Settlement Class Members about their CR-V problems, reviewed Honda's internal data and documents, and consulted with experts and consultants retained by both sides. (Gibbs Decl., ¶¶ 10, 17, 18.) The detail provided in the Second Consolidated Amended Complaint and the extensive briefing on Honda's motions to dismiss and to compel arbitration demonstrate Plaintiffs had a clear view of the strengths and weaknesses of their case and were well positioned to negotiate the Settlement before the Court.

### 4. Judgment of Experienced Trial Counsel

Proposed Class Counsel have extensive experience handling consumer class action litigation, as the Court noted in its order appointing them to represent CR-V owners. (CMO No. 2 [ECF No. 15] at 4, 7.) Based on that experience—as well as their knowledge of the strengths and weaknesses of the case, their consultations with experts and Settlement Class Members alike, and their analysis of Honda's internal records—Class Counsel believe the proposed settlement to be in the best interests of the class and urge the Court to approve it.

### 5. Nature of the Negotiations

While the Court should give significant weight to the recommendation of experienced class counsel, it also should ensure that the recommended settlement is a non-collusive one reached through arm's-length negotiations. *In re Broadwing*, 252 F.R.D. at 375. Here, there should be little doubt that the parties' settlement was reached in good faith. The parties vigorously litigated a motion to dismiss, motion to compel arbitration, and preliminary discovery matters before exploring settlement options at the Court's suggestion. They engaged in substantial formal and informal discovery to aid in those discussions and reached agreement

through arm's-length negotiations[2] presided over by professional mediator Frank A. Ray.  (Gibbs Decl., ¶¶ 10-12.)

### 6.    Objections Raised by Settlement Class Members

Settlement Class Members have yet to be given an opportunity to raise objections to the settlement, so this factor cannot be evaluated at this time.  Prior to a hearing on final approval, Plaintiffs will provide the Court with any objections they receive from the class, along with their considered response to those objections.

### 7.    Public Interest

"Public policy generally favors settlement of class action lawsuits."  *Stinson v. Delta Mgmt. Assocs.*, 302 F.R.D. 160, 165 (S.D. Ohio 2014).  The proposed settlement in this lawsuit would further that general policy of resolving complex litigation and conserving judicial resources.  But it also carries a number of other public benefits:  it benefits 2015 CR-V owners by providing them with robust information about the availability of free repairs sooner rather than later and the public at large by encouraging compliance with consumer protection and warranty laws.

### C.    The Court Should Order Dissemination of Class Notice as Proposed by the Parties

#### 1.    The Settlement Provides for a Reasonable Manner of Notice to the Settlement Class

The Federal Rules require that before finally approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e).  Because the Settlement Class is not being certified pursuant to

---

[2]    In addition, the parties reached agreement on the nature of the relief to be provided to the Settlement Class before they discussed the question of attorneys' fees and expense reimbursements.  To date, the parties have reached no agreement on fees or costs.

Fed. R. Civ. P. 23(b)(3), however, the notice need not be disseminated through individual notice." *Compare* Fed. R. Civ. P. 23(c)(2)(B); *with* Fed. R. Civ. P. 23(c)(2)(A).

Here, the parties agreed on a reasonable notice plan. (*See generally* Settlement, §§ 4, 7.) Honda will serve as Settlement Administrator. (*Id.*, ¶ 2.27.) Communications under the Customer Outreach Program will reference the existence of this litigation, the Settlement, the Settlement Website, and the toll-free phone number. (*Id.*, ¶ 7.4.) The toll-free phone number will allow Settlement Class Members to receive information in both English and Spanish. (*Id.*, ¶ 7.3.) Honda will drive traffic to the notice posted on its Owner Link Website and on the Settlement Website by optimizing web searches for 2015 CR-V vibration to make the websites appear on the first page of Google search results. (*Id.*, ¶ 4.3.2.) A long-form notice of the settlement and other case documents will also be available to Settlement Class Members on the Settlement Website, with Honda paying to direct traffic to that website through the purchase of keyword and phrase sponsorship related to the litigation on popular internet search engines. (*Id.*, ¶¶ 7.2, 7.2.1.) This combination of notice efforts is a well-designed method for alerting Settlement Class Members to the existence of the settlement, and Plaintiffs accordingly ask that the Court approve the proposed forms of notice.

### 2. Notice of the Settlement Will Be Provided to Appropriate Federal and State Officials

Notice of the proposed settlement will also be provided to the U.S. Attorney General and appropriate regulatory officials in all 50 states, as required by the Class Action Fairness Act, 28 U.S.C. § 1715. (Settlement., ¶ 7.1.) Honda will provide these government officials with copies of all required materials so that the states and federal government may make an independent evaluation of the settlement and bring any concerns to the Court's attention prior to final approval.

### D.     The Court Should Set a Schedule for Final Approval

The next steps in the settlement approval process are to schedule a final approval hearing, notify the class of the settlement and hearing, allow Settlement Class Members an opportunity to file any objections or comments regarding the settlement, and allow the parties to conduct appropriate objector discovery.

Toward these ends, the parties have provided the Court with a proposed order that provides for the following schedule:

- Honda shall establish the Settlement Website and commence implementation of the Customer Outreach Program within **45 days** after entry of a preliminary approval order, except to the extent other deadlines are provided in the Settlement Agreement.

- Honda shall file an affidavit attesting that notice was disseminated and promulgated as ordered no later than **60 days** after entry of the Order.

- The parties shall file final approval papers and Plaintiffs' counsel shall file an attorney fee and litigation expenses application within **60 days** after entry of the Order.

- The deadline for Settlement Class Members to object to the settlement shall be **105 days** after entry of the Order.

- Any responses to Settlement Class Member objections shall be filed within **130 days** after entry of the order.

- The Court shall hold a final fairness hearing on the subject of the final approval and fee motions on or around **145 days** after entry of the Order.

19

## V.     CONCLUSION

For the foregoing reasons, the parties respectfully request that the Court enter the

accompanying Proposed Order granting preliminary approval of the proposed settlement,

certifying the settlement class, appointing Class Counsel, appointing Honda as Settlement

Administrator, directing dissemination of class notice, and setting a schedule for final approval.

Respectfully submitted,


 _/s/ Eric. H. Gibbs_

Eric H. Gibbs (*pro hac vice*)
David Stein (*pro hac vice*)
Amy Zeman (*pro hac vice*)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone:     (510) 350-9700
Facsimile:      (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
amz@classlawgroup.com

*Interim Lead Counsel*

Mark H. Troutman (0076390)
Gregory M. Travalio (0000855)
Shawn K. Judge (0069493)
**ISAAC WILES BURKHOLDER &
TEETOR LLC**

Two Miranova Place, Suite 700
Columbus, Ohio 43215
Telephone:     (614) 221-2121
Facsimile:      (614) 365-9516
mtroutman@isaacwiles.com
gtravalio@isaacwiles.com
sjudge@isaacwiles.com

*Liaison Counsel*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 27, 2018, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

/s/ *Eric H. Gibbs*
Eric H. Gibbs (*pro hac vice*)
*Interim Lead Counsel*